**No. 21-4136**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

DELANTE L. LUNN,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

**On Appeal from the United States District Court for the Northern
District of Ohio, Case No. 1:21-CV-87 (1:16-CR-258)**

_____

**BRIEF OF APPELLANT**

_____

Emmett E. Robinson
ROBINSON LAW FIRM LLC
6600 Lorain Avenue #731
Cleveland, Ohio 44102
Telephone: (216) 505-6900
Facsimile: (216) 549-0508
erobinson@robinsonlegal.org

*Attorney for Petitioner-Appellant
Delante L. Lunn*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ........................................1

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES........................................................2

STATEMENT OF THE CASE........................................................2

SUMMARY OF ARGUMENT ........................................................11

STANDARD OF REVIEW ........................................................13

ARGUMENT ........................................................13

    I.  Trial Counsel's Failure to Retain a Forensic Pathologist to Testify Concerning Cause of Death Constituted Deficient Performance................13

    A. Counsel's Performance Was Plainly Deficient ........................................13

    B. Counsel's Performance Was Nearly Identical to the Ineffective Assistance Provided in *Thomas v. Clements* ........................................21

    C. Experts Were and Are Available to Rebut Dr. Miller's Crucial—and Profoundly Overstated—Testimony........................................21

       1.  Dr. Daniel Spitz........................................22

       2.  Dr. Joseph Felo........................................24

    II.  Trial Counsel's Deficient Performance Badly Prejudiced Mr. Lunn...........26

    III. The District Court Erred in Denying Mr. Lunn's § 2255 Motion................30

CONCLUSION........................................................34

CERTIFICATE OF COMPLIANCE........................................................35

RULE 30(g)(1) ADDENDUM
DESIGNATING RELEVANT DOCKET ENTRIES ........................................36

# TABLE OF AUTHORITIES

CASES

*Burrage v. United States*, 571 U.S. 204 (2014) ......................................................14

*Duncan v. Ornoski*, 528 F.3d 1222 (9th Cir. 2008) .................................................15

*Hinton v. Alabama*, 571 U.S. 263 (2014) ........................................................ 13, 33

*Knott v. Mabry*, 671 F.2d 1208 (8th Cir. 1982) ....................................................29

*Kyles v. Whitley*, 514 U.S. 419 (1995) ...................................................................27

*Raines v. United States*, 898 F.3d 680 (6th Cir. 2018) ...........................................13

*Rayborn v. United States*, 489 F. App'x 871 (6th Cir. 2012) ........................... 26-27

*Richey v. Bradshaw*, 498 F.3d 344 (6th Cir. 2007) ......................................... 14, 26

*Rogers v. Israel*, 746 F.2d 1288 (7th Cir. 1984) .....................................................29

*Strickland v. Washington*, 466 U.S. 668 (1984) .............................................. 19, 26

*Thomas v. Clements*, 789 F.3d 760 (7th Cir. 2015) ...................................... 12, 17-21

*United States v. Abrams*, 811 F. App'x 342 (6th Cir. 2020) ............................. 13-14

*United States v. Johnson*, Case No. 1:16-CR-96 (N.D. Ohio Feb. 13, 2017) ..........7

*United States v. Lunn*, 786 F. App'x 545 (6th Cir. 2019)................................. 1, 2, 9

*Woolley v. Rednour*, 702 F.3d 424 (7th Cir. 2012)................................................20

STATUTES

21 U.S.C. § 841 ................................................................................. *passim*

28 U.S.C. § 2253(c) .................................................................................2

28 U.S.C. § 2255 ................................................................................ *passim*

OTHER AUTHORITIES

U.S.S.G. § 3D1.2(d) ...............................................................................9

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

The Court should hear oral argument in this case, as Mr. Lunn raises an important issue that has never been squarely addressed by this Court. Oral argument also would provide the parties with an opportunity to address any questions or points of clarification the Court might have.

## JURISDICTIONAL STATEMENT

Delante L. Lunn was convicted of distributing a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and the 20-year-minimum-sentence provision found in 21 U.S.C. § 841(b)(1)(C) was applied to him because the jury found that "death . . . result[ed]" from the use of drugs that he distributed. This Court affirmed Mr. Lunn's conviction and sentence on September 4, 2019. *United States v. Lunn*, 786 F. App'x 545, 555 (6th Cir. 2019). Mr. Lunn filed his timely[1] § 2255 motion with the trial court on January 12, 2021. That court denied Mr. Lunn's motion on September 20, 2021, without a hearing and declined to issue a certificate of appealability. Mr. Lunn sought a certificate of appealability from this Court. Though that request was initially denied, a three-judge panel of this Court granted Mr. Lunn's petition for rehearing and granted him a certificate of appealability on

---

[1] After this Court affirmed Mr. Lunn's conviction and sentence on direct appeal (without reaching the ineffective-assistance issue), Mr. Lunn filed a petition for a writ of certiorari to the Supreme Court on December 3, 2019. (*See* Supreme Court Notice, RE 92.) That Court denied the petition on January 13, 2020. (Notice of Denial, RE 93.)

November 18, 2022, on his "claim that his trial counsel was ineffective for failing to retain a qualified expert." (Nov. 18, 2022 Order at 1.) This Court has jurisdiction pursuant to 28 U.S.C. § 2253 and 28 U.S.C. § 2255(d).

## STATEMENT OF THE ISSUES

Was trial counsel constitutionally ineffective for failing to retain an expert qualified to testify as to cause of death?

## STATEMENT OF THE CASE

The charges in this case stem from Mr. Lunn's sale of heroin to one Shanee Dowler. The extraordinary sentence—25 years—stems from the jury's conclusion, pursuant to 21 U.S.C. § 841(b)(1)(C), that "death . . . result[ed]" from the heroin Mr. Lunn sold Ms. Dowler. The evidence showing that Mr. Lunn had sold drugs to Ms. Dowler was strong.[2] But the evidence that those drugs had caused Ms. Dowler's death was much less so. The county medical examiner, for example, never conducted an autopsy. And the drug levels found in Ms. Dowler's system post-mortem were surprisingly low. Yet, inexplicably, Mr. Lunn's appointed trial counsel failed to retain—and by all accounts, failed even to search for—an expert qualified to opine on cause of death. This failure amounted to constitutionally

---

[2] Indeed, on direct appeal, this Court characterized it as "overwhelming." *United States v. Lunn*, 786 F. App'x 545, 554 (6th Cir. 2019).

ineffective assistance. Accordingly, Mr. Lunn is entitled to resentencing absent application of the 20-year minimum found in 21 U.S.C. § 841(b)(1)(C).

* * *

In January 2016, Shanee Dowler was found unresponsive in her bedroom. (Trial Tr., RE 82, at PageID# 474-78.) Paramedics arrived, and she was pronounced dead at the scene. (*Id.* at PageID# 528.) Scene photographs and testimony showed that Ms. Dowler had a partially eaten Snickers bar with her. (*Id.* at PageID# 484.) A baggie containing what proved to be a mixture of heroin and fentanyl was found on a stand in the room. (*Id.* at PageID# 556.) A separate "rock" of heroin—apparently acquired from a different source—was found inside the stand. (*Id.* at PageID# 557.)

Ms. Dowler's body was taken to the medical examiner's morgue, and a blood sample was sent for toxicology screening. (Trial Tr., RE 83, at PageID# 680, 699.) The sample tested positive for fentanyl, heroin,[3] and alprazolam (generic Xanax). (Gov't Ex. 5, RE 29-5.) Both the government's expert witnesses as well as Mr. Lunn's sole expert testified that the phenomenon of "postmortem redistribution" often acts to significantly increase the concentration

---

[3] Heroin—diacetylmorphine—is metabolized by the body within minutes. (Trial Tr., RE 83, at 651-52.) It is initially broken down into 6-monoacetylmorphine. (*Id.*) Thus Ms. Dowler's blood sample technically tested positive for 6-monoacetylmorphine rather than for heroin itself.

3

of drugs in a deceased person's bloodstream, resulting in drug-concentration readings that are artificially elevated. (*E.g.*, Trial Tr., RE 83, at PageID# 643, 703; Trial Tr., RE 84, at PageID# 968.) But even with these artificially elevated postmortem readings, the concentration of fentanyl in Ms. Dowler's blood sample barely exceeded the typical *therapeutic* range (*i.e.*, the concentration found in the blood of patients medically treated with fentanyl), and the concentrations of alprazolam and morphine (morphine is a metabolite of heroin (Trial Tr., RE 83, at PageID# 651-52)) were both well *within* the therapeutic range.[4] (*E.g.*, Gov't Ex. 5, RE 29-5; Trial Tr., RE 83, at PageID# 646, 650.)

Despite these low readings, the Lorain County Medical Examiner's Office decided not to perform an autopsy, allegedly for cost-savings reasons. (Trial Tr., RE 83, at PageID# 694.) Instead, based solely on the toxicology results, a review of scene photographs, and the fact that Ms. Dowler had a history of addiction, the Medical Examiner ruled Ms. Dowler's death had been caused by a mixed drug overdose. (*E.g.*, Gov't Ex. 4, RE 29-4.) At trial, Lorain County Chief Deputy Coroner Dr. Frank Miller testified unequivocally that "[t]he cause of death was . . .

---

[4] Evidence at trial indicated that therapeutic concentrations of fentanyl typically range from 1 to 3 nanograms per milliliter (ng/mL). (Trial Tr., RE 83, at PageID# 647.) The toxicology screen of Ms. Dowler's blood sample showed a concentration just over that standard medicinal level—at 3.3. ng/mL. (*Id.*) The tests also showed an alprazolam concentration of 11.2 ng/mL (therapeutic range 10 to 40 ng/mL) and a morphine concentration of 30.7 ng/mL (therapeutic range 10 to 80 ng/mL). (*E.g.*, *id.* at PageID# 650.)

4

mixed drug overdose, including heroin[,] fentanyl[,] and benzodiazepines [alprazolam]." (Trial Tr., RE 83, at PageID# 689.)  He reiterated that Ms. Dowler "died from acute intoxication by the combined effects of fentanyl[,] heroin[,] and [a]lprazolam." (*Id.* at PageID# 690.)  "[T]he fentanyl and the heroin and the [a]lprazolam" "killed Shanee Dowler." (*Id.* at PageID# 691.)  Dr. Miller testified that the medical examiner's office did not conduct an autopsy because drug overdose is "a very common cause of death in [Lorain] County, and we *elect* not to autopsy them because we just cannot autopsy every drug overdose due to our budget and staffing." (*Id.* at PageID# 694 (emphasis added).)

The government's direct examination of Dr. Miller spanned some 27 pages of transcript. (*See id.* at PageID# 671-97.)  Cross examination covered six. (*See id.* at PageID# 698-703.)  There, Mr. Lunn's trial counsel asked whether Ms. Dowler could have suffered from "cardiac death," from "high blood pressure," or from "pneumonia." (*Id.* at PageID# 700-01.)  Dr. Miller quickly dismissed all three and was not pressed with further questions on the subject. (*See id.*)  Regarding the decision not to perform an autopsy, defense counsel failed to exploit this gaping hole in the government's case.  The entire exchange between trial counsel and Dr. Miller on the topic was as follows:  "[Trial Counsel:] There was no autopsy done because of fiscal responsibility, correct?  [Dr. Miller:]  Right,

5

we—we just can't afford to autopsy all the drug overdoses in this County." (*Id.* at PageID# 699.)

All told, the government offered the testimony of three different experts at trial: the forensic drug analyst who testified regarding the composition of the drugs found in Ms. Dowler's room (*id.* at PageID# 619-34); the forensic toxicologist who oversaw the laboratory testing of Ms. Dowler's blood sample (*id.* at PageID# 635-669); and, most importantly, Dr. Miller, the Chief Deputy Coroner and forensic pathologist who testified that Ms. Dowler died from an overdose of fentanyl, heroin, and alprazolam (*id.* at PageID# 671-707). Mr. Lunn's trial counsel, by contrast, offered the testimony of a single expert.

But far more important than numerical comparisons, Mr. Lunn's trial counsel failed to put forward *any* expert qualified to opine on the issue at the heart of the case: Ms. Dowler's cause of death. The district court had determined pre-trial that the sole expert offered by Mr. Lunn's trial counsel was <u>not</u> qualified to testify on that issue. Specifically, on June 14, 2017—nearly eight months before the case ultimately went to trial—the government filed a motion to preclude the defense expert, Pharmacist Robert Belloto, from testifying as an expert with respect to cause of death. (Gov't Mot., RE 29.) In that particularly strong motion, the government pointed out that "Belloto has never testified in court as to cause of death." (*Id.* at PageID# 147.) Further, the government was unable to find "one

instance where a court ha[d] qualified a pharmacist to opine as to cause of death."
(*Id.*)  "Belloto is a pharmacist with no known expertise, training, or experience in forensics, let alone the medical expertise needed to opine on . . . cause of death."
(*Id.* at PageID# 150.)  Most damningly, the government pointed out that, just four months earlier, Chief Judge Gaughan—also of the Northern District of Ohio—had explicitly barred Belloto from testifying as to cause of death in another alleged fentanyl-overdose case.  (*Id.* at PageID# 149 (citing *United States v. Johnson*, Case No. 1:16-CR-96 (N.D. Ohio Feb. 13, 2017), ECF No. 44).)

The one-page opposition brief defense counsel filed three days later all but conceded that Belloto was not qualified to give an expert opinion on cause of death.  (*See* Opposition to Gov't Mot. to Disqualify Belloto, RE 32, at PageID# 185-86.)  Counsel did not address the government's arguments and did not even attempt to distinguish Judge Gaughan's decision in *Johnson*.  (*See id.*)  The trial was ultimately postponed, and the court did not formally rule on the government's motion until the final pretrial hearing on February 8, 2018.  At that hearing, the outcome of the motion was a foregone conclusion.  The entire argument and ruling on the motion consisted of the following: "[The Government:] We're objecting to [Belloto] making any opinion as to cause of death.  He's not a medical doctor.  THE COURT:  Well, he can't do that."  (2/8/18 Hr'g Tr., RE 78, at PageID# 424.)

Trial counsel for Mr. Lunn made no argument to the contrary. (*See id.*) He knew there was no way Belloto could testify regarding cause of death.

Thus, from at least the filing of the government's motion to preclude Belloto from testifying concerning cause of death—*eight months* before trial—Mr. Lunn's trial counsel was on notice that Belloto would almost certainly be precluded from testifying regarding the all-important cause-of-death issue and, therefore, that he needed to retain an additional expert if the defense were to have any hope of presenting evidence rebutting Dr. Miller's "but-for" cause-of-death testimony. But it appears trial counsel did nothing. Counsel, for example, never made a motion for funds to retain an additional expert. (*See generally* Trial Court Docket.) Nor did he request a continuance. (*Id.*) And there is no indication anywhere in the record that counsel made any attempt subsequent to June 2017 to find an expert competent to testify on the cause-of-death issue at the center of the case.

Given Dr. Miller's unequivocal cause-of-death trial testimony and defense counsel's failure to put on *any* evidence calling Dr. Miller's cause-of-death conclusion into doubt, it is no surprise that the jury ultimately found, beyond a reasonable doubt, that drugs distributed by Mr. Lunn caused Ms. Dowler's death. (*E.g.*, Trial Tr., RE 85, at PageID# 1078.) Thus, the jury found Mr. Lunn guilty of one count of distributing a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and likewise determined that the 20-year-minimum-sentence provision

found in 21 U.S.C. § 841(b)(1)(C) applied because the drugs distributed by Mr. Lunn caused Ms. Dowler's death.[5]  (*E.g.*, *id.*; 21 U.S.C. § 841(b)(1)(C).)  The trial court sentenced Mr. Lunn to 25 years' imprisonment on June 13, 2018.  (Judgment, RE 66.)  On direct appeal, Mr. Lunn raised several issues, including the argument that trial counsel had been ineffective when he failed to secure a medical (forensic) pathologist or similar expert to testify concerning the crucial cause-of-death issue. *See generally United States v. Lunn*, 786 F. App'x 545 (6th Cir. 2019).  This Court affirmed Mr. Lunn's conviction and sentence on September 4, 2019.  *Id.* at 555. But in so doing, it did not reach the merits of Mr. Lunn's ineffective-assistance argument, instead noting that the "argument should be raised to the district court in the context of a Section 2255 motion to vacate sentence." *Id.*

Following this Court's advice, Mr. Lunn filed his timely[6] § 2255 motion with the trial court on January 12, 2021.  In that motion, Mr. Lunn discussed the above facts, including the lack of autopsy, the central importance of the cause-of-death issue, counsel's failure to retain an expert qualified to testify as to cause of death, and counsel's failure to effectively cross-examine the state's cause-of-death expert or otherwise mitigate the damage wrought by his failure to retain the

---

[5] Additional counts, not at issue in this appeal, were at issue in the original trial-court proceedings.  At sentencing, Mr. Lunn's Guidelines offense level was determined based on the distribution-resulting-in-death count alone.  (*See generally* PSR, RE 63; U.S.S.G. § 3D1.2(d).)

[6] See note 1, above.

necessary expert.  Mr. Lunn also included with his § 2255 motion the declarations of two medical examiners.  Dr. Joseph Felo is Chief Deputy Medical Examiner and Forensic Pathologist at the Cuyahoga County, Ohio Medical Examiner's Office. (Felo Decl., RE 97-2, ¶ 3.)  Dr. Daniel Spitz is Chief Medical Examiner of Macomb and St. Clair Counties in Michigan.  (Spitz Decl., RE 97-3, ¶ 3.)  In their declarations, both men stated unequivocally that, on these facts, it was impossible to properly determine Ms. Dowler's cause of death without an autopsy.  (Felo Decl., RE 97-2, ¶¶ 11-16; Spitz Decl., RE 97-3, ¶¶ 12-17.)  And both men stated that they were available to testify at Mr. Lunn's trial.  (Felo Decl., RE 97-2, ¶ 17; Spitz Decl., RE 97-3, ¶ 18.)

In a 5.5-page decision issued September 20, 2021, the district court acknowledged that the pharmacist retained by defense counsel "could not opine concerning cause of death" but nevertheless denied Mr. Lunn's motion without a hearing.  (Op. & Order, RE 107, PageID# 1341, 1344.)  The court's opinion did not mention, let alone discuss, the declarations of Dr. Felo and Dr. Spitz.  (*See generally id.*)  The court declined to issue a certificate of appealability.  (*Id.* at PageID# 1344.)

Mr. Lunn filed a Motion for Certificate of Appealability with this Court on December 1, 2021.  A single member of the Court denied that motion in an order filed eight months later, on August 10, 2022.  Mr. Lunn filed a Petition for

Rehearing. On November 18, 2022, a panel of this Court granted the petition for rehearing and granted Mr. Lunn's motion for a certificate of appealability on the issue of "whether his trial counsel was ineffective for failing to retain an expert witness qualified to testify about the decedent's cause of death." (Nov. 18, 2022 Order, Doc. 12-2, at 1.)

## SUMMARY OF ARGUMENT

Trial counsel provided constitutionally ineffective assistance by failing to retain an expert qualified to testify concerning the cause of Ms. Dowler's death. The cause-of-death question was of supreme importance at trial. Application of the 20-year mandatory minimum found in 21 U.S.C. § 841(b)(1)(C) depended on how the jury saw the issue. And the issue's importance to the defense was heightened further by the relative strength of the evidence showing that Mr. Lunn had sold Ms. Dowler drugs and the relative weakness of the evidence suggesting that those drugs caused her death. With regard to the latter, the state failed to perform an autopsy on Ms. Dowler, and post-mortem blood tests showed that the drug levels in her system were all within normal therapeutic ranges, save for one that barely exceeded that range. This was so despite the fact that all parties agreed that the phenomenon of post-mortem redistribution meant that these readings were artificially *elevated*.

Notwithstanding the importance of the issue and the government's vulnerability regarding the same, trial counsel retained only one expert—Pharmacist Belloto—who was not qualified to testify concerning cause of death. Counsel was on notice for eight months that Belloto almost certainly would be barred from testifying on that issue, and the district court made that ruling official before trial began. Still counsel failed to retain a qualified expert.

Trial counsel's deficient performance badly prejudiced Mr. Lunn. At trial, the government's cause-of-death expert testified repeatedly and unequivocally that drugs sold by Mr. Lunn were a but-for cause of Ms. Dowler's death. Trial counsel's failure to muster a cause-of-death expert meant that this testimony went unrebutted. And as the declarations attached to Mr. Lunn's memorandum in support of his § 2255 motion show, there was and is no shortage of qualified experts willing to persuasively contradict the government expert's crucial—and profoundly overstated—testimony. That trial counsel's failure to retain a qualified expert prejudiced Mr. Lunn is further evidenced by the prosecutor's decision to hammer the issue in closing arguments. It is thus no wonder, then, that, in *Thomas v. Clements*, faced with circumstances almost perfectly analogous to this case, the Seventh Circuit opted to grant habeas relief.

The district court's terse decision denying Mr. Lunn's § 2255 motion was flawed in multiple respects. That decision glossed over *Thomas*, misread the

Supreme Court's decision in *Hinton v. Alabama*, and failed to even mention, let alone duly consider, the expert declarations Mr. Lunn proffered in support of his motion. Moreover, the district court's conclusion that trial counsel's decision not to retain a qualified expert was a "strategic" one immune to challenge was entirely unsupported. There was no possible strategic advantage to be gained by giving the government a pass on the cause-of-death issue.

For these reasons, and as explained more fully below, Mr. Lunn's trial counsel provided ineffective assistance, and Mr. Lunn is entitled to relief.

## STANDARD OF REVIEW

"When reviewing a district court's denial of a § 2255 motion," this Court "review[s] factual findings for clear error and legal conclusions de novo." *Raines v. United States*, 898 F.3d 680, 688 (6th Cir. 2018).

## ARGUMENT

**I.    Trial Counsel's Failure to Retain a Forensic Pathologist to Testify Concerning Cause of Death Constituted Deficient Performance.**

### A. Counsel's Performance Was Plainly Deficient.

In order for the 20-year minimum sentence found in § 841(b)(1)(C) to apply, the factfinder must find beyond a reasonable doubt that the drugs distributed by the defendant caused the decedent's death. Accordingly, "[t]he Supreme Court has held that § 841(b)(1)(C)'s 'death results' enhancement requires the 'but for' finding" that, but for the drugs distributed by the defendant, the decedent would

not have died.  *United States v. Abrams*, 811 F. App'x 342, 348 (6th Cir. 2020)

(citing *Burrage v. United States*, 571 U.S. 204, 218-19 (2014)).

Despite the central importance of this cause-of-death inquiry, Mr. Lunn's

trial counsel failed to retain an expert qualified to opine on the issue.  Instead, the

only cause-of-death testimony the jury heard came from the state's own expert,

forensic pathologist Frank Miller—the very individual who had made the

remarkable decision not to perform an autopsy on Ms. Dowler.  Dr. Miller testified

unequivocally that, even *without* an autopsy, he could be certain that a drug

overdose caused Ms. Dowler's death.   Mr. Lunn's trial counsel left these

devastating assertions unanswered.  *See Richey v. Bradshaw*, 498 F.3d 344, 362-63

(6th Cir. 2007) ("A lawyer who fails adequately to investigate, and to introduce

into evidence, information that demonstrates his client's factual innocence, *or that*

*raises sufficient doubts as to that question* to undermine confidence in the verdict,

renders deficient performance." (emphasis added; citation and internal quotation

marks omitted)).

Instead, the only evidence offered in the defense case-in-chief was the

testimony of pharmacist Robert Belloto, discussed in the fact section above.  The

government moved to bar Belloto from testifying as to cause of death eight months

prior to trial.  (Gov't Mot., RE 29.)  Belloto had *no* medical training.  (Trial Tr.,

RE 84, at PageID# 978.)  And from at least the date of the government's June 2017

motion to exclude, trial counsel was on notice that another judge in the Northern District of Ohio had recently ruled on this very issue regarding this very expert and had barred him from testifying as to cause of death. *See supra* at 7.

Thus, trial counsel knew for months that Belloto would almost certainly be barred from testifying as to cause of death—the dispositive issue with respect to the § 841(b)(1)(C) 20-year minimum. And the trial court, as discussed above, ultimately did bar such testimony, via a pre-trial hearing decision from the bench.[7] *Supra* at 7. In all this time, however, counsel failed to retain an expert—*i.e.*, a forensic pathologist—qualified to testify on cause of death. *Cf. Duncan v. Ornoski*, 528 F.3d 1222, 1235 (9th Cir. 2008) ("when the prosecutor's expert witness testifies about pivotal evidence or directly contradicts the defense theory, defense counsel's failure to present expert testimony on that matter may constitute deficient performance"). Indeed, counsel failed to offer *any* evidence to counter Dr. Miller. Nor was this a case in which defense counsel's particularly effective cross examination of the government's expert witness moderated the damage caused by his failure to present affirmative evidence undermining the government's theory. Trial counsel's cross examination of Dr. Miller began with counsel repeatedly misstating the concentration of fentanyl found in Ms. Dowler's

---

[7] Mr. Lunn's trial counsel did not argue or contest the issue at that hearing in any way. (*See* 2/8/18 Hr'g Tr., RE 78.)

post-mortem blood sample.  (Trial Tr., RE 83, at PageID# 698.)  He sought to correct Dr. Miller's purported misstatement regarding that level but was ultimately himself corrected by Dr. Miller.[8]  Trial counsel also then briefly sought to challenge Dr. Miller's cause-of-death conclusions, but those challenges, tentative and coming from a layman, were swiftly and effectively shot down.[9]  Further, he

---

[8] Q.  You saw the lab results from AIT, and the fentanyl amount was just .1 over the therapeutic range, correct?

A.  I think it's 3.3 and the range is 3, but yeah, it's just over the top of the range that's listed, yes.

Q.  Well, I hate to correct you because you're the expert, but I believe it's 3.1.  Maybe I'm mistaken.

A.  3.3

Q.  You have 3.3?

A.  Yes.

Q.  And that—where are those results from?

A.  The original copy of the Lorain County toxicology test.

A.  Okay.  That's not the AIT results then that we've been looking at?

A.  Yeah, they were faxed to us from AIT and the result is 3.3.  It's the same that's on the exhibit.

(Trial Tr., RE 83, at PageID# 698.)

[9] Q.  . . . could Ms. Dowler's death have been from another cause, say cardiomegaly—I'm going to get this, spit it out here—cardiomegaly or sudden cardia, cardiac death?

A.  It's a remote possibility in a 24-year-old girl.  If she had cardiomegaly, the drugs would contribute to her death, and she still would have died as a combined result of her natural disease, making her susceptible to the drugs.

Whether she had a blocked coronary artery as a 24-year-old-woman, that was not checked.

failed to exploit the gaping vulnerability in the state's case caused by the lack of an autopsy.[10]

In short, there was no strategic benefit to counsels' failure to retain a qualified expert—a failure which constituted deficient performance.

### B. Counsel's Performance Was Nearly Identical to the Ineffective Assistance Provided in *Thomas v. Clements*.

In many ways, Mr. Lunn's case is on all fours with the Seventh Circuit's decision in *Thomas v. Clements*, 789 F.3d 760 (7th Cir. 2015). In that case, the district court had denied habeas relief to the petitioner, Oscar Thomas, who had been convicted of first-degree murder for the intentional strangulation of the

---

(continued…)

> Q. What about untreated high blood pressure [as the cause of death]?
>
> A. Well, that would . . . cause hypertensive cardiac disease, which would predispose her to overdosing on her drugs.
>
> Q. Could she have had pneumonia and this would cause a similar presentation of death?
>
> A. It could, but the main source of her getting pneumonia would be overdosing and surviving.

(Trial Tr., RE 83, PageID# at 700-01.)

[10] Trial counsel asked only, "There was no autopsy done because of fiscal responsibility, correct?" (Trial Tr., RE 83, at PageID# 699.) Dr. Miller simply responded, "Right, we—we just can't afford to autopsy all the drug overdoses in this County." (*Id.*) Thus, Dr. Miller was able to use the opportunity not only to confirm the budgetary rationale behind the decision but also to reinforce his opinion that the cause of death was drug overdose. Trial counsel had no follow-up questions. (*See id.*)

victim, his ex-wife and roommate. *Id.* at 771. There was little doubt at trial but that Thomas had killed his roommate. Indeed, he had admitted to doing so. But he also claimed that her death was an accident—that he had inadvertently asphyxiated her during rough sex and "horseplay." *Id.* at 764, 769. Thus "Thomas's intent was one of the linchpins of the case, if not the key point." *Id.* at 772. "[Y]et defense counsel presented no affirmative evidence" on the subject. *Id.* Rather, the only affirmative evidence came from the state. In its case in chief, the state offered the expert testimony of a forensic pathologist, who testified that the victim "died from 'strangulation and the strangulation was due to a physical assault.'" *Id.* at 764. Importantly, the state's pathologist also opined, "***This was not an accident.***" *Id.* (emphasis added).

On federal habeas review, Thomas argued that counsel was ineffective for failing to retain a defense forensic pathologist to counter the state's expert's conclusion that the victim's death was intentional. Thomas "d[id] not assert that trial counsel should have found an expert who would testify that Thomas did not cause [the victim's] death." *Id.* at 768. Rather, "Thomas argue[d] that defense counsel was deficient in failing to consider and consult with a pathologist who would have reviewed the autopsy report and possibly testified." *Id.* On habeas review, he offered the opinions of his own forensic pathologist, Dr. Teas, who opined that, while she "'[could] not rule out strangulation'" and "could not 'know

18

a definite cause of death,'" nevertheless "'the autopsy findings [were] not inconsistent with Oscar Thomas'[s]'" claim that he accidentally caused the victim's death. *Id.* at 765. Trial counsel, Thomas argued, had been ineffective in failing to retain someone like Dr. Teas to counter the state's expert's unequivocal—and otherwise uncontradicted—testimony. *Id.*

The district court rejected Thomas's ineffective-assistance argument and denied habeas relief. *Id.* But the Seventh Circuit reversed. *Id.* at 772. The Seventh Circuit faulted trial counsel for failing to obtain the input of a forensic pathologist who could speak to the issue of intent, noting that "'counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Id.* at 768-69 (quoting *Strickland*, 466 U.S. at 691). The court analogized the case to another in which it had faulted defense counsel for "present[ing] no counter evidence to rebut" the state pathologist's crucial testimony. *Id.* at 771. And the court further pointed out that this was *not* "a case where counsel's cross-examination of [the state's forensic pathologist] made up for the lack of [defense expert]" testimony. *Id.* at 769. With respect to cross, "the best defense counsel could do was ask the state's expert whether she disagreed with her own diagnosis and thought the death could be an accident." *Id.* at 770. In response, the state's expert "'repeatedly denied any alternative explanations'" and her "'denials in the face of cross-examination only

confirmed the one-sidedness of the expert opinion before the jury.'" *Id.* at 770 (quoting *Woolley v. Rednour*, 702 F.3d 411, 424 (7th Cir. 2012)).  Given all this, the importance of the intent issue to the case, and the extent to which Dr. Teas's opinions undermined the state's case, the Seventh Circuit concluded that trial counsel had performed deficiently and that the deficiency had prejudiced Thomas. *E.g.*, *id.* at 772-73.  It therefore reversed the district court and granted habeas relief.

The similarities between *Thomas* and Mr. Lunn's case run deep.  In both cases, the government offered unequivocal expert testimony from a forensic pathologist on a cause-of-death issue that was critical to the case.  In both cases, defense trial counsel failed to retain an expert forensic pathologist to counter the government's forensic pathologist.  In both cases, counsel failed to offer *any* affirmative evidence to rebut the government's expert's cause-of-death pronouncements.  And in both cases, defense counsel's attempts to cross examine the government's forensic pathologist "fell flat." *Id.* at 770.

And the parallels do not end there.  In both *Thomas* and Mr. Lunn's case, post-conviction counsel offered the opinions of forensic pathologists who could have, and would have, countered the government pathologists' otherwise unrebutted testimony at trial.  And in both, the expert opinions offered by the defense in post-conviction proceedings significantly undermined—rather than definitively refuted—the government pathologists' testimony.  In *Thomas*, after all,

20

the petitioner "d[id] not assert that trial counsel should have found an expert who would testify that Thomas did not cause [the victim's] death." *Id.* at 768. And, indeed, Dr. Teas did not deny that Thomas *could* have intentionally strangled the victim; rather, she opined only that the evidence was insufficient to establish a "'definite cause of death.'" *Id.* at 765. Likewise here (as discussed in more detail directly below), the experts whose opinions Mr. Lunn now offers this Court do not deny that Ms. Dowler *could* have died from a drug overdose. But they nevertheless rebut Dr. Miller's testimony by opining that, in light of the Lorain County Coroner's norm-breaking and unprofessional failure to perform an autopsy on Ms. Dowler,[11] it is impossible to rule out other potential causes of death here and, thus, impossible to state, with a reasonable degree of certainty, that the drugs caused Ms. Dowler's death.

### C. Experts Were and Are Available to Rebut Dr. Miller's Crucial—and Profoundly Overstated—Testimony.

In further support of his § 2255 motion, Mr. Lunn provided the trial court with the declarations of Drs. Daniel Spitz and Joseph Felo. (RE 97-2, 97-3.) Both men are forensic pathologists and medical examiners. Both are deeply troubled by

---

[11] Mr. Lunn's ineffective-assistance claim is thus even stronger than the corresponding claim in *Thomas*. In *Thomas*, the factual dispute was over interpretation of autopsy results. Here, the issue is broader, encompassing not only (as in *Thomas*) disagreement over the interpretation of the available data on cause of death but also (unlike *Thomas*) the ramifications of the failure to conduct an autopsy in the first place.

the Lorain County Coroner's failure to conduct an autopsy in this case, and the opinions of both men undermine, to a profound and likely dispositive degree, Dr. Miller's unequivocal trial testimony that Ms. Dowler "died from acute intoxication by the combined effects of fentanyl[,] heroin[,] and [a]lprazolam." (Trial Tr., RE 83, at PageID# 690.) For ease of reference, each man's background and expert opinions will be discussed in turn.

### 1. Dr. Daniel Spitz

Dr. Daniel Spitz serves as Chief Medical Examiner of Macomb and St. Clair Counties in Michigan. (Spitz Decl., RE 97-3, ¶ 3.) The counties, just outside of Detroit, have a combined population in excess of one million. (*See id.*) Dr. Spitz has "personally conducted and overseen thousands of post-mortem examinations" (*id.* ¶ 7) over the course of his 20-year career (*id.* ¶ 6). Additionally, Dr. Spitz is a prolific author and consultant in the field of forensic pathology. (*Id.* ¶ 4.) Dr. Spitz reviewed all of the relevant available evidence in this case, including the ambulance patient-care report for Ms. Dowler, the toxicology report for Ms. Dowler's blood sample, the Lorain County Coroner's verdict, Dr. Miller's letter documenting his opinion regarding Ms. Dowler's cause of death, the transcript of Dr. Miller's trial testimony, and scene photographs of Ms. Dowler. (*Id.* ¶ 8.)

Dr. Spitz stated that the failure to perform an autopsy on Ms. Dowler violated applicable National Academy of Medical Examiners' ("NAME")

standards and professional norms. (*Id.* ¶ 11.) He opined that budget constraints are *never* a valid excuse for deviating from professional obligations. (*Id.*) Crucially, he concluded that, "[w]hile the concentrations of fentanyl and morphine found in the blood drawn from Shanee Dowler's femoral blood vessels . . . *could* have caused her death, <u>this cannot be concluded with a high degree of certainty without an autopsy examination</u>." *Id.* ¶ 12 (underline added). "**In the absence of an autopsy, there remains considerable doubt regarding the correctness of the Lorain County [Coroner's] cause of death determination**." *Id.* at 14 (emphasis added). He went on to explain:

> In order to properly determine Shanee Dowler's cause of death, an autopsy was necessary to correlate the autopsy findings with the toxicology results. <u>Evaluating toxicology results without the benefit of the autopsy findings leaves unanswered questions regarding the cause of death</u>. . . . It cannot be assumed that if an autopsy had been conducted on the body of Shanee Dowler that the autopsy would not have led to the determination that natural disease or traumatic injury was the cause of her death.

(*Id.* ¶¶ 15-16 (emphasis added).) Dr. Spitz goes on to identify several other potential causes of death, by way of example only, that could well have killed Ms. Dowler, including "cardiac disease, ruptured cerebral aneurysm[,] . . . pulmonary embolism," and "asphyxiation."[12] (*Id.* ¶ 17.) He notes that the risk of the first three "is increased in overweight individuals, such as Shanee Dowler." (*Id.*)

---

[12] Recall the partially eaten Snickers bar found with Ms. Dowler. *Supra* at 3.

23

These independent causes of death cannot be "ruled in or out" without an autopsy. (*Id.*)

### 2. Dr. Joseph Felo

Dr. Joseph Felo is the Chief Deputy Medical Examiner and Forensic Pathologist at the Cuyahoga County, Ohio Medical Examiner's Office. (Felo Decl., RE 97-2, ¶ 3.) As of the date of his declaration, he had served as Chief Deputy for roughly five years and had been employed as a forensic pathologist with the Office for 23 years. (*Id.*) He, too, is an active author, consultant, and presenter in his field. (*Id.* ¶ 4.) Dr. Felo, as of the date of his declaration, had personally performed 4,162 autopsies. (*Id.* ¶ 6.) Like Dr. Spitz, Dr. Felo reviewed all of the relevant case documents in forming his opinions on this matter. (*Id.* ¶ 7.)

Dr. Felo was deeply troubled by the Lorain County Coroner's decision not to perform an autopsy in this case. *Id.* ¶ 10. That decision was contrary to governing NAME standards and was in direct defiance of the guidance found in the NAME position paper attached to Dr. Felo's declaration. (*Id.*; *see also* Felo Decl. Ex. A-3, RE 97-2, PageID# 1228-32.) Dr. Felo agrees with Dr. Spitz that "budgetary constraints do not justify the decision not to conduct an autopsy here." (Felo Decl. ¶ 10.) He notes, like Dr. Spitz, that the drugs found in Ms. Dowler's blood sample "*could* have caused her death." (*Id.* ¶ 11.) But he also declares that "**this cannot be concluded with an appropriate degree of medical certainty without an**

24

**autopsy examination.**" (*Id.* (emphasis added).)  He thus agrees that "considerable doubt" remains as to whether the drugs did in fact cause Ms. Dowler's death.  (*Id.* ¶ 13.)    Like Dr. Spitz, he lists "cardiac disease, ruptured cerebral artery aneurysm[,] . . . pulmonary embolism," and "asphyxiation" as potential causes of death in this particular case.  (*Id.* ¶ 16.)  He also adds to this list "other blunt trauma not visible from external examination." (*Id.*)  The likelihood of some of these potential causes of death was increased by the fact that Ms. Dowler was overweight.  (*Id.*)  And these causes of death could only be "ruled in or out with an autopsy." (*Id.*)

Drs. Felo and Spitz both state that they were available to testify at the time of Mr. Lunn's trial.  (*Id.* ¶ 17; Spitz Decl., RE 97-3, ¶ 18.)  And as stated by undersigned counsel in his brief before the trial court, counsel located these experts with relative ease, without the need to engage in a protracted search.  (Memo. in Support of § 2255 Mot., RE 97-1, at PageID# 1181.)

* * *

The cause-of-death issue—whether or not the drugs were a but-for cause of Ms. Dowler's death—was and is at the very center of this case.  Indeed, it is *the* issue with respect to the applicability of the § 841(b)(1)(C) mandatory 20-year minimum.    Trial counsel was on notice for eight months that his proposed pharmacist expert would all but certainly not be permitted to testify on the topic,

thus leaving Mr. Lunn without *any* effective means of countering Dr. Miller's unequivocal conclusions that drugs supplied by Mr. Lunn did indeed cause Ms. Dowler's death.  And trial counsel did not mitigate the effects of this deficiency with effective cross-examination of Dr. Miller; rather, that examination likely bolstered Dr. Miller's credibility in the eyes of the jury.  Further, as the declarations of Drs. Spitz and Felo show, experts qualified to testify in Mr. Lunn's favor concerning cause of death were readily available, and their opinions fundamentally undermine Dr. Miller's testimony.  Given all this, one "can discern no strategic reason why counsel would have so readily ceded this terrain to the prosecution." *Richey*, 498 F.3d at 363.  Trial counsel's performance was plainly deficient.

## II.   <u>Trial Counsel's Deficient Performance Badly Prejudiced Mr. Lunn.</u>

Not only was trial counsel's performance deficient, it is likewise clear that the failure to retain a forensic pathologist to rebut Dr. Miller's unequivocal cause-of-death testimony badly prejudiced Mr. Lunn at trial.  Having shown deficient performance, the second prong of the *Strickland* inquiry requires that there be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  "[C]ertainty of a different outcome is not required." *Rayborn*, 489

F. App'x at 878. In assessing "reasonable probability," "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial . . . ." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

As discussed above, whether drugs supplied by Mr. Lunn were a but-for cause of Ms. Dowler's death was the central issue in this case. The massive penalty mandated by § 841(b)(1)(C) would not have applied without proof beyond a reasonable doubt that the drugs did indeed cause Ms. Dowler's death. *Cf. Thomas*, 789 F.3d at 772 (failure to retain expert was prejudicial because the issue on which the expert would have opined "was one of the linchpins of the case, if not the key point"). Trial counsel's deficient performance meant that the government's version of the facts surrounding this crucial issue went unchallenged. Defense counsel presented *no* contrary affirmative evidence. Dr. Miller's opinion was never directly countered or even effectively called into question, as even trial counsel's cross examination of Dr. Miller did little more than reinforce the authority of Dr. Miller's opinions. *See supra* at 15-17. Thus the jury effectively heard only the opinion that Ms. Dowler's death was caused by the drugs at issue.

Add to all this the fact that, when it came to the issue of but-for causation, the government's case "was not ironclad by any stretch of the imagination." *Thomas*, 789 F.3d at 771. To the contrary, as discussed in the fact section above,

even though postmortem redistribution falsely elevates drug-concentration levels, still Ms. Dowler's fentanyl levels barely exceeded the therapeutic range, and her morphine levels (a metabolite of heroin) were well *within* that range. *Supra* at 4. Further, though so much of the case hung on Ms. Dowler's cause of death, the Lorain County Coroner never performed an autopsy. And, as Drs. Spitz and Felo state, the failure to perform an autopsy was an egregious breach of governing standards and professional norms. Even more importantly, as both state in their declarations, without an autopsy Ms. Dowler's cause of death could *not* be properly determined. Testimony from Dr. Spitz, Dr. Felo, or another forensic pathologist would have served as a powerful and effective counterweight to Dr. Miller's overstated testimony.

Given the importance of the but-for causation issue, the unchallenged nature of Dr. Miller's testimony, the force of Dr. Spitz's and Dr. Felo's opinions, and the coroner's breathtaking failure to perform an autopsy in this *cause of death* case, there can be no doubt but that defense trial counsel's failure to retain an expert qualified to opine on cause of death and the profound error of Dr. Miller's decision not to perform an autopsy prejudiced Mr. Lunn. That is, it is reasonably probable—indeed, highly likely—that testimony like that now put forth by Drs. Spitz and Felo would have caused the jury to determine that reasonable doubt was present as to whether the drugs were the but-for cause of Ms. Dowler's death. In a

case like this one, it is "'vital in affording effective representation . . . for counsel to elicit expert testimony rebutting the state's expert testimony.'" *Rogers v. Israel*, 746 F.2d 1288, 1294 (7th Cir. 1984) (quoting *Knott v. Mabry*, 671 F.2d 1208, 1213 (8th Cir. 1982)).

Perhaps the very best gauge for assessing the prejudicial effect of trial counsel's deficient performance is the prosecutor's own implicit assessment of the issue during closing arguments. There, the government hammered home the fact that the defense had utterly failed to rebut Dr. Miller's testimony that the drugs were the but-for cause of Ms. Dowler's death. The government clearly saw this defense failure as key to its own potential victory. Accordingly, the government touted Dr. Miller in its closing, reminding the jury of his long experience and that they had "heard about the number of cases where. . . it was his responsibility to determine the manner of death. You've heard that he's never been disqualified as an expert." (Trial Tr., RE 84, at PageID# 1030.) And the government panned the expert offered by the defense, noting he was "[a] pharmacist, who's going to come in here and try to give some judgment on cause of death." (*Id.* at PageID# 1031.) Then the prosecution went for the jugular:

> What you did hear from Dr. Miller was those drugs were the "but for" cause. "But for" those drugs, maybe Shanee Dowler would be here with us today. They were the "but for" cause.
> **Ladies and gentlemen, that was unrebutted. Unrefuted. Undisputed.** Those are the drugs that killed Shanee Dowler.

(*Id.* (emphasis added).)  That counsel, by his deficient performance, enabled the government to close with such a powerful, damning argument is by itself profoundly prejudicial.

### III.   The District Court Erred in Denying Mr. Lunn's § 2255 Motion.

The district court's opinion and order denying Mr. Lunn's § 2255 motion without a hearing spanned only 5.5 pages and contained just under two pages of analysis.  (Opinion & Order, RE 107, at PageID# 1339-44.)  The district court rejected Mr. Lunn's "primary allegation"—that trial counsel was ineffective because he "failed to retain a forensic pathologist that could testify as to the cause of death"—reasoning as follows:

> Trial counsel offered the testimony of a pharmacist, Dr. Bell[o]to,[13] who could not opine concerning cause of death.  However, Dr. Bell[o]to did testify regarding post-mortem redistribution and the victim's history with drugs that would have increased her tolerance. Dr. Bell[o]to further testified that the fentanyl in the victim's blood could have been from a previous use, therefore, <u>the fatal drugs could have been provided by a different dealer</u>.

(*Id.* at PageID# 1341 (emphasis added).)

But this reasoning does not support the district court's conclusion.  First, the district court conceded that Belloto was barred from "opin[ing] concerning cause of death."  Second, the court provided no logical or legal support for its conclusion

---

[13] Again, Belloto is not a medical doctor.  (Trial Tr., RE 84, at PageID# 978.)

that testimony concerning "post-mortem redistribution" and the decedent's drug-tolerance level was an adequate substitute for testimony on the actual statutory element at issue—cause of death.  Third, the district court stated that Belloto provided testimony suggesting that "the fatal drugs could have been provided by a different dealer."  (*Id.* (emphasis added).)  Thus, even in the midst of purportedly considering Mr. Lunn's claim that trial counsel was ineffective for failing to retain an expert qualified to testify concerning cause of death, the district court still assumed that cause of death had already been properly determined and was irrefutable.  The affidavits of Drs. Felo and Spitz show that is not the case.[14]

The district court also rejected Mr. Lunn's reliance on the Seventh Circuit's decision in *Thomas v. Clements*, concluding *Thomas* was distinguishable because "[h]ere, counsel's decision to highlight the previously mentioned issues through expert testimony"—*i.e.*, post-mortem redistribution, the decedent's past drug use, and the possibility that the "fatal drugs" came from someone else—"was part of the defense's tactical strategy."  (*Id.* at PageID# 1342.)  But Mr. Lunn is not second-guessing his appointed counsel's tactical decision to raise these issues or to call an expert to testify on them.  Rather, the issue here—just like *Thomas*—is

---

[14] The district court's decision was faulty for yet another reason.  That court failed to even mention, let alone properly consider, the expert opinions offered by Drs. Felo and Spitz in the declarations accompanying Mr. Lunn's memorandum in support of his § 2255 motion.

counsel's failure to call *another* expert (either in place of or in addition to Belloto) qualified to testify on cause of death. *Thomas* is on all fours with this case, and the district court's attempt to distinguish it falls flat. There was no conceivable benefit to not calling a cause-of-death expert here, and the district court did not even attempt to articulate one.

In the final paragraph addressing the merits of Mr. Lunn's motion, the district court concluded that, even if trial counsel had been ineffective, there was not a reasonable probability that the outcome of the case would have been different had an expert qualified to testify as to cause of death been called because "it is undisputed that the victim had a toxic level of fentanyl in her system" and because the jury heard evidence "that there could have been alternative causes of death." (*Id.* at PageID# 1342.) But as previously discussed, the level of fentanyl in Ms. Dowler's blood sample was barely outside the therapeutic range, and there was broad agreement amongst the witnesses at trial that the phenomenon of post-mortem redistribution meant that even these figures were artificially high. *Supra* at 3-4. Further, the district court's statement that the jury heard evidence "that there could have been alternative causes of death" is incorrect. Dr. Miller explicitly and repeatedly *rejected* the notion that Ms. Dowler's death might not have been caused by the drugs in her system. *Supra* at 16-17. And Belloto, banned from opining on

cause of death, merely answered a handful of medical questions in the abstract.[15] (Trial Tr., RE 84, at PageID# 971-72 (Q. Could certain evidence "be consistent with pneumonia?  A. It could be.")

Finally, the district court relied upon *Hinton v. Alabama*, 571 U.S. 263, 275 (2014), for the proposition that "'selection of an expert witness is a paradigmatic example of the type of strategic choice that, when made after thorough investigation of the law and facts, is virtually unchallengeable.'"  (Opinion & Order, RE 107, at PageID# 1341.)  The district court apparently interpreted this passage to mean that, so long as trial counsel retained *some* expert, his failure to obtain an expert qualified to testify concerning cause of death was "virtually unchallengeable."  But that is a misreading of *Hinton*.  Instead, the quoted *Hinton* passage referred to second-guessing trial counsel's selection of an expert who, "though qualified" to testify on the issue at hand "was not qualified enough," *i.e.*, was not, in the defendant's hindsight estimation, persuasive or imposing enough. *Hinton*, 571 U.S. at 275 (emphasis added).  That, of course, is not the situation here.  Mr. Lunn's argument is not that trial counsel could have found a better or

---

[15] The district court declined to issue a certificate of appealability "[f]or the reasons stated" in the substantive portion of its decision.  (Opinion & Order, RE 107, at PageID# 1344.)  But the reasoning underlying the district court's substantive decision is, as discussed, wrong.  Therefore, its decision not to grant a certificate of appealability was also error.

more persuasive expert to testify concerning cause of death but rather that trial counsel failed to retain *any* expert who could testify on cause of death.

## CONCLUSION

For all these reasons, Petitioner-Appellant Delante L. Lunn respectfully asks this Court to reverse the district court's denial of his § 2255 motion, vacate the finding and application of "death . . . results" liability under 21 U.S.C. § 841(b)(1)(C), and remand for resentencing absent application of that 20-year minimum-sentence provision.

Dated:  January 27, 2023                         Respectfully submitted,

                                                                    /s/ Emmett E. Robinson
                                                                    Emmett E. Robinson
                                                                    ROBINSON LAW FIRM LLC
                                                                    6600 Lorain Avenue #731
                                                                    Cleveland, Ohio 44102
                                                                    Telephone: (216) 505-6900
                                                                    Facsimile: (216) 649-0508
                                                                    erobinson@robinsonappeals.com

                                                                    *Attorney for Petitioner-Appellant*
                                                                    *Delante L. Lunn*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,194 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1).  As permitted by Federal Rule of Appellate Procedure 32(g)(1), I have relied on the word count function of Microsoft Word in preparing this certificate.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Emmett E. Robinson
Emmett E. Robinson

*Attorney for Petitioner-Appellant*
*Delante L. Lunn*

# RULE 30(g)(1) ADDENDUM
## DESIGNATING RELEVANT DOCKET ENTRIES

Pursuant to Sixth Circuit Rules 28(b)(1)(A)(i) and 30(g)(1), Appellant

Delante L. Lunn designates the following documents from the lower court record

as relevant to the instant appeal:

| Record Entry # | Description | PageID |
|---|---|---|
| 1 | Indictment | 1 |
| 29 | Government Motion to Exclude Belloto Cause-of-Death Testimony | 146 |
| 29-4 | Coroner's Verdict | 171 |
| 29-5 | Blood Test Results | 172 |
| 32 | Defense Opposition to Motion to Exclude Belloto Cause-of-Death Testimony | 183 |
| 66 | Judgment | 366 |
| 78 | February 8, 2018 Hearing Transcript | 413 |
| 82 | Trial Transcript Volume 1 | 448 |
| 83 | Trial Transcript Volume 2 | 619 |
| 84 | Trial Transcript Volume 3 | 829 |
| 85 | Trial Transcript Volume 4 | 1077 |
| 92 | Notice of Filing of Petition for Writ of Certiorari | 1140 |
| 93 | Notice of Denial of Petition for Writ of Certiorari | 1141 |
| 97-1 | Memorandum in Support of § 2255 Motion | 1162 |
| 97-2 | Declaration of Dr. Joseph Felo | 1187 |
| 97-3 | Declaration of Dr. Daniel Spitz | 1233 |
| 107 | Opinion and Order Denying § 2255 Motion | 1339 |