IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

NO. 21-4136

---

DELANTE L. LUNN,
Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,
Respondent-Appellee.

---

On Appeal from the United States District Court
for the Northern District of Ohio
Eastern Division

---

BRIEF OF RESPONDENT-APPELLEE

---

MICHELLE M. BAEPPLER
First Assistant United States Attorney

Jason Manion
Assistant United States Attorney
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
Telephone No: (216) 622-3781
Facsimile No: (216) 522-7358
Jason.Manion@usdoj.gov

Counsel for Plaintiff-Appellee

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................iv

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES.............................................................2

STATEMENT OF THE CASE .............................................................3

SUMMARY OF THE ARGUMENT ....................................................17

ARGUMENT ...........................................................................20

    I.    The District Court Correctly Rejected Lunn's Claim That His Counsel, Who Hired An Experienced Expert Witness To Undercut The Government's Claim That The Drugs Lunn Sold To A 25-Year-Old Woman Caused Her Death, Was Constitutionally Ineffective For Not Hiring A Second Expert To Testify More Directly About That Issue. ................................................................20

CONCLUSION.........................................................................39

CERTIFICATE OF COMPLIANCE ....................................................40

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .............41

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Awkal v. Mitchell*, 613 F.3d 629 (6th Cir. 2010) ....................................................35

*Bell v. Cone*, 535 U.S. 685 (2002) ............................................................... 21, 38

*Burt v. Titlow*, 571 U.S. 12 (2013)............................................................. 19, 21, 22

*Combs v. Coyle*, 205 F.3d 269 (6th Cir. 2000) .........................................................35

*Cullen v. Pinholster*, 563 U.S. 170 (2011)..............................................................21

*Dovala v. Bandauf*, No. 20-4222,
   2021 WL 3732338 (6th Cir. Aug. 24, 2021) .......................................................23

*Dunham v. United States*, 486 F.3d 931 (6th Cir. 2007) ....................................1, 38

*Dunn v. Reeves*, 141 S. Ct. 2405 (2021) .......................................................... *passim*

*Gabrion v. United States*, 43 F.4th 569 (6th Cir. 2022) .........................................20

*Harrington v. Richter*, 562 U.S. 86 (2011)....................................................... *passim*

*Hinton v. Alabama*, 571 U.S. 263 (2014) ........................................................ *passim*

*Lunn v. United States*, No. 1:21-cv-87,
   (N.D. Ohio Jan. 12, 2021)....................................................................................1

*Lunn v. United States*, No. 18-3568,
   (U.S. Jan. 13, 2020) ............................................................................................1

*McQueen v. Winn*, No. 19-2212,
   2021 WL 3079699 (6th Cir. July 21, 2021) .......................................................23

*Samatar v. Clarridge*, 225 F. App'x 366 (6th Cir. 2007)........................................23

*Strickland v. Washington*, 466 U.S. 668 (1984) ............................................. *passim*

*Thomas v. Clements*, 789 F.3d 760 (7th Cir. 2015)............................... 23, 29, 30, 31

*United States v. Davis*, 970 F.3d 650 (6th Cir. 2020)...................................... 32, 34

*United States v. Lunn*, 786 F. App'x 545 (6th Cir. 2019)............................... *passim*

*Wingate v. United States*, 969 F.3d 251 (6th Cir. 2020)........................................20

*Yarborough v. Gentry*, 540 U.S. 1 (2003) ..................................................... 21, 22, 31

## Federal Constitutional Provisions

U.S. Const. amend. VI ....................................................................................20

## Federal Statutes

18 U.S.C. § 3231 ...............................................................................................1

21 U.S.C. § 841 .................................................................................................5

28 U.S.C. § 2253 ...............................................................................................1

28 U.S.C. § 2255................................................................................... *passim*

## Federal Rules

Fed. R. App. P.  34 ........................................................................................ iv

Fed. R. App. P. 4 ..............................................................................................1

## Other Authorities

Brief of Plaintiff-Appellee,
    *United States v. Lunn*, No. 18-3568 (6th Cir. Jan. 11, 2019). .............................4

Trial Transcript,
    *United States v. Davis*, No. 1:16CR260 (N.D. Ohio Apr. 24, 2018) .... 32, 33, 34

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Respondent-Appellee, the United States of America, believes that oral argument is unnecessary because the briefs and record adequately present the facts and legal arguments in this case, and oral argument would not significantly aid the Court's decisional basis.  In 2019, on direct appeal, this Court affirmed Petitioner-Appellant Delante L. Lunn's convictions and sentence after a jury convicted him of distributing a heroin-and-fentanyl mixture that the jury found resulted in a young woman's death.  *See United States v. Lunn*, 786 F. App'x 545 (6th Cir. 2019). This appeal, from the district court's denial of a subsequent 28 U.S.C. § 2255 motion, raises only one issue:  whether Lunn's trial counsel, who hired an expert to undercut the government's theory that the heroin-and-fentanyl mixture Lunn sold to the victim caused her death, was constitutionally ineffective for opting not to hire a second expert to testify more directly about the victim's cause of death.  The district court decided this question without an evidentiary hearing, and this Court can likewise decide this issue without oral argument.

The United States therefore recommends that this Court decide this case on the briefs under Federal Rule of Appellate Procedure 34(a)(2)(C).

# JURISDICTIONAL STATEMENT

The district court, which presided over the original criminal case and had jurisdiction to do so under 18 U.S.C. § 3231, (R. 1: Indictment, PageID 1-4), had jurisdiction under 28 U.S.C. § 2255 to consider Delante Lunn's motion to correct his sentence. That motion was timely filed on January 12, 2021, *Lunn v. United States*, No. 1:21-cv-87 (N.D. Ohio), within a year of the Supreme Court's denial of Lunn's petition for *certiorari* after this Court affirmed his convictions and sentence, *Lunn v. United States*, No. 18-3568 (U.S. Jan. 13, 2020). *See* 28 U.S.C. § 2255(f)(1). The district court denied Lunn's motion on September 20, 2021, and declined to grant a certificate of appealability. (R. 108: Final Order, PageID 1345).

Lunn filed a timely notice of appeal on November 18, 2021. (R. 109: Notice of Appeal, PageID 1346); *see* Fed. R. App. P. 4(a)(1)(B). This Court ultimately granted Lunn a certificate of appealability on one of his ineffective-assistance-of-trial-counsel claims. (Doc. 12-2: Order Granting Certificate of Appealability).

This Court has jurisdiction over that claim under 28 U.S.C. § 2253 and 28 U.S.C. § 2255(d). But because the certificate of appealability was limited in scope, this Court lacks jurisdiction to address any other challenge to Lunn's convictions or sentence. *See Dunham v. United States*, 486 F.3d 931, 934-35 (6th Cir. 2007).

1

## <u>STATEMENT OF THE ISSUES</u>

I.    Whether the district court correctly held that Delante Lunn failed to show that his trial counsel, who hired an expert to undercut the government's claim that the drugs Lunn sold to the victim caused her death, provided constitutionally ineffective assistance by opting not to hire a second expert to testify more directly about the cause of death?

## STATEMENT OF THE CASE

**A.    Introduction.**

In 2018, a federal jury convicted Delante Lunn of distributing a heroin-and-fentanyl mixture that killed a 25-year-old woman.  This Court affirmed Lunn's convictions and sentence the next year, noting that the evidence against him at trial was "'overwhelming.'"  *United States v. Lunn*, 786 F. App'x 545, 554 (6th Cir. 2019).  The trial evidence showed that the victim, Shanee Dowler, was recovering from a heroin addiction when Lunn "got her high" and had sex with her.  *Id.* at 548.  Dowler came back for more drugs the following day, and Lunn sold her a mixture of heroin and fentanyl.  *Id.*  The next morning, Dowler died.  *Id.* at 549.

Lunn now challenges the district court's denial of his claims that his trial counsel provided constitutionally ineffective assistance at trial, but the court denied his claims after correctly finding that they failed to satisfy the standards governing such claims set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny.  In particular, the court rejected Lunn's claim that his counsel provided constitutionally ineffective assistance by opting not to hire a forensic pathologist to testify directly about Dowler's cause of death.  The court first correctly held that Lunn had not overcome the strong presumption that his trial counsel's performance was sufficient.  Lunn's counsel hired an experienced expert witness whose testimony undercut the government's claim that the Lunn's drugs caused Dowler's

death, and the court found that counsel's decision to do so using that expert's testimony was part of counsel's tactical strategy. The court also correctly held that any deficiency was not prejudicial because Lunn had not shown a substantial likelihood that hiring a forensic pathologist would have produced a different result. Because the district court's judgment was correct, this Court should affirm.

**B.     A Federal Jury Convicts Lunn Of Causing A 25-Year-Old Woman's Death By Selling Her A Mixture Of Heroin And Fentanyl.**

The factual overview in this section is drawn primarily from this Court's 2019 decision affirming Lunn's convictions and sentence. While the government believes this overview fully outlines the facts needed to decide this appeal, a more-complete recitation of the facts, if needed, is available in the government's brief in that appeal. Brief of Plaintiff-Appellee, *United States v. Lunn*, No. 18-3568, Doc. 43 (6th Cir. Jan. 11, 2019).

In February 2016, 25-year-old Shanee Dowler "died of an overdose" the morning after she bought "a mixture of heroin and fentanyl" from Lunn. *Lunn*, 786 F. App'x at 548-49. A federal grand jury returned a five-count indictment against Lunn later that year. (Doc. 1: Indictment, PageID 1). Three counts related to Lunn's drug distribution to Dowler and two related to his later drug distribution to another person. *See* (*id.*, PageID 1-4). Lunn pled guilty to the latter two counts and the government dismissed one Dowler-related count, but Lunn proceeded to trial on the remaining two Dowler-related counts. *Lunn*, 786 F. App'x at 547, 549.

One of those counts "included an enhanced penalty provision requiring the jury to find beyond a reasonable doubt that the drugs [Dowler] received from [Lunn] 'resulted in her death.'" *Id.* (quoting 21 U.S.C. § 841(b)(1)(C)).

At trial, the government introduced, in this Court's words, "'overwhelming evidence'" of Lunn's guilt. *Id.* at 554 (citation omitted). That evidence showed that Dowler, at the time of her overdose, was recovering from a heroin addiction in an outpatient treatment program after having overdosed on heroin the prior year. *Id.* at 548. Dowler's recovery was not "slip-free," and she told the woman with whom she was living, Roma Black, that "'she was doing Xanax,'" but promised to stop after Black warned that taking Xanax could "'lead up to other things.'" *Id.*

On February 17, 2017, Dowler said she was going to see a friend named "Gus"—a name Lunn used. *Id.* The next morning, Black noticed that Dowler appeared "'extremely out of it.'" *Id.* Dowler's sister-in-law, Brianna Robertson, later testified that Dowler confided in Robertson that Dowler had spent the night with Lunn. *Id.* Lunn "got her high and they had sexual relations." *Id.* This was the first Robertson had heard of Dowler using drugs again. *Id.*

On the afternoon of February 18, 2017, Dowler asked Robertson to give her a ride. *Id.* Although Dowler told Black that they were going to a substance-abuse meeting, she returned to the house too quickly to have attended such a meeting. *Id.* Instead, Dowler had asked Robertson to take her to meet Lunn. *Id.* On their way

to see Lunn, Dowler asked Robertson to message Lunn on Facebook asking him for the "'same thing'" he had given Dowler the night before. *Id.* Lunn was inside his car when they arrived, and Dowler briefly joined him there. *Id.* After Dowler returned to Robertson's car, Robertson saw Dowler with a "piece of plastic baggy" containing a substance that Robertson assumed to be heroin. *Id.*; (R. 83: Trial Trans., PageID 799).

Although Dowler "'seemed fine'" when she first returned to Black's house, she started to act "'really funny'" around midnight. *Lunn*, 786 F. App'x at 548. The next morning, Dowler was still alive, but Black's son, who also lived in the house, told her "'to take her drunk butt'" back to bed. *Id.* at 548-49. Later that morning, Black found Dowler unresponsive in her bed. *Id.* at 549. Although Black called 911, first responders arrived too late to revive Dowler. *Id.*

Near Dowler's body was a "'torn-off corner of a plastic baggy'" that contained a mixture of heroin and fentanyl. *Id.* Dowler also had other drugs, including two more Xanax pills and heroin, in her bedroom. *Id.* According to trial testimony and forensic toxicology tests from blood samples taken from Dowler's body after her death, Dowler died of a mixed-drug overdose. *Id.* Photos of Dowler's body taken at the scene of her death showed "fluid coming out of [her] nose and pooling in [her] eye after [she was] turned over," a "very common" sign of a drug overdose. (R. 83: Trial Trans., PageID 681, 694).

A jury convicted Lunn on both counts.  *Lunn*, 786 F. App'x at 549.  In doing so, the jury found beyond a reasonable doubt that the drugs Lunn sold Dowler "resulted in" her death.  *See id.* at 547, 549.  The district court sentenced Lunn to 300 months' imprisonment and three years of supervised release.  *Id.* at 549.

## C.    At Trial, Lunn's Counsel Vigorously Challenges The Government's Theory That Lunn's Drugs Caused Dowler's Death.

Although the jury ultimately found beyond a reasonable doubt that the drugs Lunn sold Dowler "resulted in" her death, this element was far from uncontested.  Lunn's counsel vigorously challenged the government's evidence on this point in two main ways.  First, he hired an expert witness who testified at trial and whose testimony, if believed, could well have led the jury to find in Lunn's favor on the cause-of-death question.  Second, he vigorously cross-examined the government's experts on the cause-of-death question, successfully eliciting testimony that bolstered the defense's key themes.  Lunn's counsel then featured this testimony prominently in his closing argument.

### 1.    Lunn's counsel presents expert testimony that, in three main ways, undercut the government's theory that Lunn's drugs caused Dowler's death.

Lunn's counsel hired an expert witness, Dr. Robert Belloto, who held a master's degree in pharmaceutical chemistry and a Ph.D. in pharmacokinetics (or "clinical pharmacology").  (R. 84: Trial Trans., PageID 960).  Dr. Belloto had worked in the Department of Pharmacology at the University of Toledo and

supervised the Biopharmaceutical Analysis Research Laboratory there; had served as an associate professor at a university in Las Vegas, Nevada; and had published numerous papers and book chapters. (*Id.*, PageID 961-62). He had also served as an expert witness for over twenty years and had testified on about a hundred occasions. (*Id.*, PageID 962, 979).

Dr. Belloto's testimony undercut the government's theory that it was Lunn's drugs that had caused Dowler's death, in three main ways. First, he questioned the government's expert's testimony that the measured level of fentanyl concentration in Dowler's blood (3.3 nanograms per milliliter of blood) was a toxic or lethal level. He testified that his "biggest complaint" with the reports from the lab that had tested Dowler's blood was "the therapeutic ranges they list." (*Id.*, PageID 967-68). He said he had researched statistics regarding the levels of fentanyl in the blood of patients who had died from other causes (such as cancer), and "the levels are all very high," "much higher than 3.3," but the patients represented in these statistics nevertheless "didn't die from that fentanyl." (*Id.*, PageID 969-70). Indeed, the levels of fentanyl in these patients' blood "went as high as 80" nanograms per milliliter of blood. (*Id.*, PageID 970). And he testified that he was aware of surgical patients being administered 800 micrograms—or 800,000 nanograms—of fentanyl, which would result in nanogram-per-milliliter levels in the "20's" or "30's." (*Id.*, PageID 975). In sum, Dr. Belloto testified that

8

"one person's toxicity is another's therapeutic dose." (*Id.*, PageID 972).

Second, Dr. Belloto testified that even the 3.3-nanograms-per-milliliter fentanyl level that was measured in Dowler's blood was likely "falsely elevated" due to a phenomenon called "post-mortem distribution." (*Id.*, PageID 965, 968). He noted that Dowler's blood was not drawn until nearly five hours after her death, and that the levels of certain drugs—including fentanyl—"increase upon death." (*Id.*, PageID 965). Post-mortem distribution, according to Dr. Belloto, is "an actual factual occurrence" that has "been studied many times," and anyone testifying that post-mortem distribution does not occur would be testifying "inaccurate[ly]." (*Id.*). Because of post-mortem distribution, Dr. Belloto testified that therapeutic ranges for fentanyl—which are used to guide treatment for living patients—should not also be applied to determine whether post-mortem fentanyl levels were toxic or lethal. *See* (*id.*, PageID 965, 968).

Third, Dr. Belloto provided possible alternate explanations for Dowler's cause of death. He testified that there was no way to know when Dowler ingested the fentanyl that was detected in her blood. (*Id.*, PageID 971). And he provided several possible non-fentanyl-related explanations for her death. For example, he testified that sudden cardiac death or death from untreated high blood pressure cannot be diagnosed without an autopsy. (*Id.*). He also testified that, based on his review of the photos of Dowler's body, there was blood around her nose and that

this was consistent with someone who had died of pneumonia. (*Id.*, PageID 971-72). And he testified that a photo from the scene of Dowler's death showed a Snickers bar with a bite out of it next to her and suggested that a proper cause-of-death determination would need to "make sure" the decedent was not "choking on something they ate." (*Id.*, PageID 976).

> **2.    Lunn's counsel vigorously cross-examines the government's expert witnesses and successfully elicits testimony supporting his key themes.**

In addition to hiring Dr. Belloto to present testimony on the defense's three main themes discussed above, Lunn's counsel also vigorously cross-examined the government's expert witnesses. He also successfully elicited testimony from them that supported those three themes, as well as other testimony that could have damaged the government's case had the jury credited it.

First, Lunn's counsel elicited testimony on cross-examination supporting the defense's theme that therapeutic ranges are unhelpful in determining the cause of death and that, in any event, the fentanyl level in Dowler's blood was only barely outside therapeutic ranges. On cross-examination, Dr. Frank Miller, the Chief Deputy Coroner of Lorain County, Ohio, a board-certified forensic pathologist who made the determination that Dowler died of a mixed-drug overdose, admitted that "one person's toxicity is another's therapeutic dose" and that the fentanyl level that would prove toxic or fatal "varies from person to person." (R. 83: Trial

Trans., PageID 671-73, 689, 701).  He also admitted that Dowler's fentanyl level was "just over the top of" the therapeutic range listed on the toxicology report. (*Id.*, PageID 698).  Similarly, on cross-examination, Dr. Kevin Shanks, a forensic toxicologist employed by the lab that had tested Dowler's blood and who had created the toxicology report, admitted that "the toxicity of fentanyl is . . . specific to the individual" and that Dowler's fentanyl level was "[j]ust a smidge over the therapeutic range."  (*Id.*, PageID 635-37, 639-40, 662-63).

Second, Lunn's counsel elicited testimony on cross-examination supporting the defense's theme that even the barely-above-therapeutic-range fentanyl level found in Dowler's blood was falsely elevated because of post-mortem distribution. On cross-examination, Dr. Miller admitted that post-mortem distribution was "known" to happen with fentanyl and that it would be "impossible to backtrack and find out what the exact" level of fentanyl in Dowler's blood "was at the time of death."  (*Id.*, PageID 700, 702-03).  Similarly, on cross-examination, Dr. Shanks admitted that post-mortem distribution "can" happen with fentanyl, although he did not think it necessarily occurred in all cases.  (*Id.*, PageID 660-61, 662-63).

Third, Lunn's counsel elicited testimony on cross-examination supporting the defense's theme that there could have been other causes of death.  On cross-examination, Dr. Miller admitted that a photo from the scene of Dowler's death showed a Snickers bar with a bite out of it next to her body.  (*Id.*, PageID 699).

When asked whether there was "ever any attempt to check her throat or larynx to see if" part of the Snickers bar "was lodged in there," Dr. Miller could say only that Dowler's "mouth"—not her throat—"would have been examined" and that nothing was found "in the front of her mouth." (*Id.*, PageID 699-700). Dr. Miller also admitted that sudden cardiac death was a "possibility" (although he considered it only a "remote possibility"), but that he had "not checked" "[w]hether [Dowler] ha[d] a blocked coronary artery." (*Id.*, PageID 700-01). Similarly, Dr. Miller acknowledged that untreated high blood pressure or pneumonia could also have caused or contributed to causing Dowler's death. (*Id.*, PageID 701).

In addition to eliciting testimony supporting Dr. Belloto's three main points, Lunn's counsel elicited testimony on cross-examination that could otherwise have damaged the government's case. Among other things, Dr. Miller admitted that the reason Lorain County had not conducted an autopsy on Dowler's body was "because of fiscal responsibility" and its inability to "afford to autopsy all the drug overdoses" occurring there. (*Id.*, PageID 699). And among other things, Dr. Shanks admitted that, at least "theoretically," it would take more fentanyl to cause someone who "ha[d] been somewhat of a frequent drug user" to overdose than for someone who had not previously used drugs, and that the fentanyl level in Dowler's blood might not have been enough to "cause . . . ill effects" to someone who had "used heroin or fentanyl frequently in the past." (*Id.*, PageID 663).

12

### 3.    Lunn's counsel prominently features portions of this testimony in his closing argument.

During his closing argument, Lunn's counsel prominently featured some of this testimony.  On the defense's post-mortem distribution theme, Lunn's counsel reminded the jury both that Dr. Belloto testified that post-mortem distribution "does occur," that "[i]t's a fact," and that "I believe that Dr. Frank Miller was in agreement with that."  (R. 84: Trial Trans., PageID 1043).

On the defense's alternate-cause-of-death theme, Lunn's counsel reminded the jury about the Snickers bar and highlighted Dr. Miller's admissions about it:

> I mean I asked about the Snickers bar, which had one bite
> taken out of it, sitting right there at this poor lady's knee,
> in her state of pose when she passed, all he could tell us
> was it wasn't in the front of her mouth.  A bite of a
> Snickers bar.  It's as logical as anything to suggest she
> was asphyxiated, aspirated due to choking.

(*Id.*, PageID 1044).  He also summarized Dr. Miller's testimony as having "le[ft] the door wide open for asphyxiation," sudden cardiac death, and "[p]neumonia" as possible alternate causes of death.  (*Id.*, PageID 1052).

Lunn's counsel also made use during his closing argument of the two other pieces of testimony discussed above that he elicited from the government's experts on cross-examination.  He first reminded the jury about Dr. Miller's admissions about the reason for the lack of an autopsy:

> Dr. Frank Miller, the forensic pathologist from Lorain,
> was very candid.  It was shocking to me that there was no

13

autopsy done on this as it should be to you.  And why is
that?  Fiscal responsibility.

(*Id.*, PageID 1044).  And he also reminded the jury about the testimony that

Dowler had been a frequent drug user, *see* (*id.*, PageID 1045), which, as

Dr. Shanks had admitted on cross-examination, could have increased Dowler's

drug tolerance.  *See* (R. 83: Trial Trans., PageID 663).

**D.    After This Court Affirms Lunn's Conviction And Sentence, Lunn Files
A 28 U.S.C. § 2255 Motion Claiming That His Trial Counsel Was
Constitutionally Ineffective For Not Hiring A Second Expert To Testify
More Directly About Dowler's Cause Of Death.**

On direct appeal, Lunn raised several challenges to his conviction, including

an ineffective-assistance-of-trial-counsel claim, but this Court affirmed.  *Lunn*,

786 F. App'x at 555.  In doing so, this Court characterized the evidence of Lunn's

guilt in this case as "'overwhelming.'"  *Id.* at 554 (citation omitted).  This Court,

however, followed its usual approach to ineffective-assistance-of-counsel claims

and declined to resolve on direct appeal Lunn's claim that his trial counsel

"rendered ineffective assistance by retaining a pharmacist rather than a medical

pathologist to testify regarding causation at trial," inviting him to instead raise this

argument in a motion to vacate his sentence under 28 U.S.C. § 2255.  *Id.* at 555.

Lunn thereafter filed a Section 2255 motion, again arguing that his trial

counsel had provided constitutionally ineffective assistance at trial.  (R. 97-1:

Section 2255 Motion, PageID 1162-86).  As relevant to this appeal, Lunn argued

that his counsel rendered constitutionally deficient performance when he opted not to retain a forensic pathologist who was medically qualified to testify directly about Dowler's likely cause of death. (*Id.*, PageID 1173-76). And Lunn argued that this purportedly deficient performance prejudiced him. (*Id.*, PageID 1182-85). In support, Lunn offered affidavits from two forensic pathologists who said that Lorain County should have conducted an autopsy, and that without autopsy results, there was neither enough medical certainty to be sure that Dowler died of a mixed-drug overdose nor to rule out alternative causes of death. (*Id.*, PageID 1179-81).

**E.    The District Court Denies Lunn's 28 U.S.C. § 2255 Motion, Holding That Lunn Failed To Satisfy Either Of *Strickland*'s Prongs.**

The district court denied Lunn's petition. (R. 107: Opinion, PageID 1339). It rejected Lunn's ineffective-assistance-of-trial-counsel claim, concluding that Lunn failed to satisfy either of *Strickland*'s prongs. (*Id.*, PageID 1341-43).

The district court first concluded that Lunn had not shown that his trial counsel's performance was constitutionally deficient. (*Id.*, PageID 1341-42). Although Lunn's trial counsel did not hire a forensic pathologist who could testify directly about Dowler's likely cause of death, the court noted that Lunn's counsel did hire Dr. Belloto to undercut the government's theory that Lunn's drugs caused Dowler's death. (*Id.*, PageID 1341). And the court found that the "decision to highlight" the weaknesses in the government's case through Dr. Belloto's testimony "was part of the defense's tactical strategy." (*Id.*, PageID 1342).

15

The district court next concluded that, even if Lunn's counsel's performance was deficient in any way, Lunn "ha[d] not shown that there is a reasonable probability that the outcome would have been different." (*Id.*). Despite all of Dr. Belloto's testimony undercutting the government's theory of the case and Lunn's counsel's cross-examination of the government's expert witnesses at trial, a jury "still found that the cause of death was from the drugs supplied by" Lunn to the victim. (*Id.*, PageID 1342-43). The court, which had presided over the trial, found that Lunn had not shown "a substantial likelihood" that hiring a forensic pathologist to testify more directly about the cause of Dowler's death would have produced "a different result." (*Id.*, PageID 1343).

After rejecting Lunn's ineffective-assistance-of-trial claim, the district court declined to issue Lunn a certificate of appealability. (*Id.*, PageID 1344).

This timely appeal followed. (R. 109: Notice of Appeal, PageID 1346). Although a divided panel found that "reasonable jurists could debate whether [Lunn's] trial counsel was ineffective for failing to retain an expert witness qualified to testify [directly] about the decedent's cause of death," (Doc. 12-2: Order Granting Certificate of Appealability, Page 1), a closer review shows that the district court was correct when it concluded that Lunn's trial counsel was not constitutionally ineffective. This Court should therefore affirm.

## SUMMARY OF THE ARGUMENT

The district court correctly denied Delante Lunn's claim that his trial counsel was constitutionally ineffective. Faced at trial with "'overwhelming evidence'" of Lunn's guilt, *see Lunn*, 786 F. App'x at 554 (citation omitted), Lunn's trial counsel vigorously defended against the government's claim that the heroin-and-fentanyl mixture that Lunn sold to Shanee Dowler the afternoon before she died caused her death. This vigorous defense more than satisfied the Sixth Amendment's requirements, as the district court correctly held.

To succeed on appeal, Lunn must show "both that his counsel provided deficient assistance and that there was prejudice as a result." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). Doing so "'is never an easy task,'" *id.* at 105 (citation omitted), and Lunn's ineffective-assistance claim fails both prongs.

First, Lunn cannot show that his trial counsel provided constitutionally deficient representation. Lunn's counsel knew that a key question in the case was whether Lunn's drugs—or someone else's drugs or something else altogether—caused Dowler's death and provided a vigorous defense on this issue. Lunn's counsel first hired an experienced expert witness, Dr. Belloto, to undercut the government's evidence on this issue in multiple ways. Counsel also vigorously cross-examined the government's witnesses on the cause-of-death issues, eliciting several concessions that bolstered the defense's theories. And counsel prominently

featured Dr. Belloto's testimony and the government's witnesses' concessions in his closing argument. After reviewing Lunn's counsel's approach on the causation question, the district court found that counsel's decision to rely on Dr. Belloto's testimony to undercut the government's evidence was "part of the defense's tactical strategy." (R. 107: Opinion, PageID 1341-42). This finding, combined with the rigorous standards governing ineffective-assistance claims that make well-informed tactical decisions "virtually unchallengeable," *see Strickland*, 466 U.S. at 690, dooms Lunn's claim that his counsel provided deficient performance.

Second, Lunn cannot show that any deficiencies in his trial counsel's representation prejudiced him. As this Court noted when it affirmed Lunn's conviction and sentence, the evidence of Lunn's guilt was "'overwhelming.'" *Lunn*, 786 F. App'x at 554 (citation omitted). And most of the testimony that Lunn now wishes a forensic pathologist would have given at his trial was already covered at trial, whether by Dr. Belloto or by the government's witnesses on cross-examination or both. Despite all this, the jury nevertheless concluded that Lunn's drugs caused Dowler's death. The same district court that oversaw Lunn's trial thus correctly found that Lunn had not proven "a substantial likelihood of a different result sufficient to establish prejudice." (R. 107: Opinion, PageID 1343).

Lunn's arguments to the contrary fail. He argues that his trial counsel was constitutionally ineffective because, even though he hired an experienced expert to

undercut the government's evidence that the heroin-and-fentanyl mixture Lunn sold to Dowler caused her death, he opted not to hire a forensic pathologist to testify more directly about the victim's cause of death. But the Supreme Court in *Richter* already rejected the essence of Lunn's claim. As the Court put it, the Sixth Amendment "does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Richter*, 562 U.S. at 111. And, more generally, a counsel's strategic choice regarding whom to hire as an expert witness "is a paradigmatic example of the type of 'strategic choice' that, when made 'after thorough investigation of the law and facts,' is 'virtually unchallengeable.'" *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (*per curiam*) (quoting *Strickland*, 466 U.S. at 690-91). Hiring a forensic pathologist in circumstances like the ones in this case can backfire, so opting not to hire one is a reasonable strategic choice. And finally, even if perfect trial counsel would have paired Dr. Belloto's helpful testimony with additional testimony from a forensic pathologist, "the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt v. Titlow*, 571 U.S. 12, 24 (2013).

In sum, Lunn's ineffective-assistance-of-counsel claim on appeal fails on both of *Strickland*'s prongs. This Court should therefore affirm the district court's order denying Lunn's ineffective-assistance-of-counsel claims.

19

## **ARGUMENT**

I.    **The District Court Correctly Rejected Lunn's Claim That His Counsel, Who Hired An Experienced Expert Witness To Undercut The Government's Claim That The Drugs Lunn Sold To A 25-Year-Old Woman Caused Her Death, Was Constitutionally Ineffective For Not Hiring A Second Expert To Testify More Directly About That Issue.**

### A.    Standard of Review.

When a district court denies a 28 U.S.C. § 2255 motion, this Court reviews the court's legal determinations *de novo* and its factual findings for clear error. *Gabrion v. United States*, 43 F.4th 569, 577-78 (6th Cir. 2022).  This Court reviews the district court's conclusion that a defendant's trial counsel was not constitutionally ineffective—a mixed question of law and fact—*de novo*. *See id.*; *see also Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020).

### B.    Argument.

Trial counsel's defense did not run afoul of the Sixth Amendment.  The Sixth Amendment guarantees a defendant the right "to have the Assistance of Counsel for his defen[s]e."  U.S. Const. amend. VI.  And the Supreme Court has interpreted this to include a right to the effective assistance of counsel.  *Strickland*, 466 U.S. at 686.  Ineffective-assistance-of-counsel claims have two elements, and the defendant must prove both:  "First, the defendant must show that counsel's performance was deficient."  *Id.* at 687.  "Second, the defendant must show that the deficient performance prejudiced the defense."  *Id.*

1.    **Judicial scrutiny of counsel's performance is highly deferential, and tactical choices—including those surrounding hiring experts—are strongly presumed to fall within the wide range of reasonable assistance.**

Judicial scrutiny of counsel's performance is highly deferential. After all, "the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Titlow*, 571 U.S. at 24; *accord Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (*per curiam*). And there are "'countless ways to provide effective assistance in any given case.'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 689). The "standard for judging counsel's representation is" therefore "a most deferential one." *Richter*, 562 U.S. at 105 (collecting cases).

Counsel's performance is constitutionally ineffective only if it "amount[s] to incompetence." *Id.* It is thus not enough for a defendant to show that his counsel "deviated from best practices" or even "most common custom." *Id.* Indeed, "even if there is reason to think that counsel's conduct 'was far from exemplary,' a court *still* may not grant relief if 'the record does not reveal' that counsel took an approach that *no competent lawyer* would have chosen." *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) (citation and alteration omitted; emphases added).

In evaluating whether counsel took an approach no competent lawyer would have chosen, courts must avoid applying "the harsh light of hindsight," *Bell v. Cone*, 535 U.S. 685, 702 (2002), since it is "'all too tempting'" to "'second-guess

counsel's assistance after" it proves unsuccessful.  *Richter*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689).  Courts must instead deferentially "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 490.

When a defendant challenges a trial-related omission made by counsel, courts employ "a strong presumption" that the omission was "for tactical reasons rather than through sheer neglect." *Gentry*, 540 U.S. at 8 (citing *Strickland*, 466 U.S. at 690).  In cases like this one, where the claim is based "solely on the trial record"—not on any affidavit or testimony from counsel—this "presumption has particular force." *Id.*  "The burden of rebutting this presumption 'rests squarely on the defendant,' and 'it should go without saying that the absence of evidence cannot overcome'" the presumption.  *Reeves*, 141 S. Ct. at 2410 (quoting *Titlow*, 571 U.S. at 22-23) (alteration omitted).

This general rule applies to decisions surrounding the hiring of expert witnesses.  "[S]trategic decisions—including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness." *Reeves*, 141 S. Ct. at 2411 (quoting *Richter*, 562 U.S. at 104).  And the "selection of an expert witness," if counsel chooses to hire one, "is a paradigmatic example of the type of 'strategic choice' that, when made 'after thorough investigation of the law and facts,' is 'virtually unchallengeable.'" *Hinton*, 571 U.S. at 275 (quoting *Strickland*,

22

466 U.S. at 690) (alterations omitted).  Ineffective-assistance-of-counsel claims

based on "the relative qualifications of experts hired and experts that may have

been hired," or alleging that "the hiring of an expert who, though qualified, was not

qualified enough," should be denied.  *See id.*

   Particularly relevant here, the Supreme Court has made clear that the Sixth

Amendment "does not enact Newton's third law for the presentation of evidence,

requiring for every prosecution expert an equal and opposite expert from the

defense."  *Richter*, 562 U.S. at 111.  To the contrary, "the best strategy"—and

certainly one that does not fall short of *Strickland*'s requirements—can be to cross-

examine the government's expert witnesses and "to say that there is too much

doubt about the [government's] theory for a jury to convict," particularly when the

"defense counsel does not have a solid case."  *Id.*; *accord, e.g.*, *Dovala v. Bandauf*,

No. 20-4222, 2021 WL 3732338, at *7 (6th Cir. Aug. 24, 2021) ("*Strickland* does

not require a defense attorney to present an expert whenever the prosecution does"

and the Supreme Court has "endorsed" relying instead on cross-examination);

*McQueen v. Winn*, No. 19-2212, 2021 WL 3079699, at *5 (6th Cir. July 21, 2021)

(similar); *Samatar v. Clarridge*, 225 F. App'x 366, 372 (6th Cir. 2007) (similar);

*accord Thomas v. Clements*, 789 F.3d 760, 770 (7th Cir. 2015) ("That is not to say

reasonable performance requires retaining an expert every time the state does or

every time the state presents the testimony of a forensic expert.").

> **2.    Lunn's counsel's vigorous defense at trial fell well within the wide range of reasonable assistance, and any deficiency did not prejudice the outcome.**

Lunn has not shown that his counsel's defense at trial was incompetent, so he has failed to show that his counsel's performance was constitutionally deficient. And Lunn has not shown that any deficiency prejudiced him.  Lunn's ineffective-assistance-of-counsel claim therefore fails, and this Court should affirm.

> **a.    Lunn's counsel's performance was constitutionally sufficient.**

Faced at trial with "'overwhelming evidence'" of Lunn's guilt, *Lunn*, 786 F. App'x at 554 (citation omitted), Lunn's trial counsel nevertheless vigorously defended against the government's theory that the heroin-and-fentanyl mixture Lunn sold Dowler caused her death.  Lunn's counsel presented testimony from an experienced expert witness undercutting the government's theory, he used cross-examination to elicit concessions from the government's expert witnesses, and he incorporated this testimony and these concessions into his closing arguments.  This defense was far from incompetent and thus was constitutionally sufficient.

First, Lunn's counsel hired an experienced expert witness, Dr. Belloto, to sow doubt about whether the drugs Lunn sold Dowler caused her death. Dr. Belloto, who had testified in approximately 100 prior trials, testified both that the 3.3-nanograms-per-mililiter fentanyl level measured in Dowler's blood was not a lethal level and that, in any event, that barely-outside-therapeutic-range 3.3 level

was artificially inflated because of post-mortem redistribution.  (R. 84: Trial Trans., PageID 962-75, 979).  He also provided the jury possible alternate explanations for why Dowler died, including choking on part of a Snickers bar and other hidden health conditions.  (*Id.*, PageID 971-72, 976).

Second, Lunn's counsel vigorously cross-examined the government's expert witnesses, eliciting confessions that bolstered the defense theory.  These witnesses admitted on cross-examination that Dowler's fentanyl levels were "[j]ust a smidge over the therapeutic range" and that post-mortem distribution is "known" to happen with fentanyl.  (R. 83: Trial Trans., PageID 635-40, 660-63, 671-73, 689, 698, 700-03).  They conceded that they had not examined inside Dowler's throat for a piece of a Snickers bar.  (*Id.*, PageID 699-700).  They admitted that other hidden health conditions could have caused Dowler's death and that they had not checked for these conditions.  (*Id.*, PageID 700-701).  And they provided other concessions that could have damaged the government's case, including that fiscal responsibility was the reason for a lack of autopsy and that Dowler's history of drug use could have made her less susceptible to an overdose than others, thus further calling into question the likelihood that barely-outside-therapeutic-range fentanyl levels would have caused Dowler's death.  (*Id.*, PageID 663, 699).  Lunn's counsel thus effectively used cross-examination to bolster the defense's themes and to create new avenues to challenge the government's case.

Finally, Lunn's counsel prominently featured post-mortem distribution, the Snickers-bar theory, other non-drug-related possible causes of death, the reason for the lack of an autopsy, and Dowler's history of drug use in his closing arguments to the jury. (R. 84: Trial Trans., PageID 1043-45, 1052).

Applying the law discussed above to these facts makes clear that the district court correctly held that Lunn's claim failed *Strickland*'s deficiency prong. The decisions whether to hire an expert at all, and which expert to hire if he chose to hire one, were tactical decisions for Lunn's counsel to make. *Reeves*, 141 S. Ct. at 2411; *Hinton*, 571 U.S. at 275. Lunn's counsel not only chose to hire an expert— whose testimony, if believed, could easily have created reasonable doubt about whether the death-results enhancement applied—but also chose to employ what the Supreme Court has said can be the "best strategy" in the face of overwhelming evidence: cross-examining the government's witnesses and arguing that "there is too much doubt about [its] theory for a jury to convict." *Richter*, 562 U.S. at 111.

The district court correctly found, in line with this precedent, that Lunn's counsel's "decision to highlight" the issues he highlighted through Dr. Belloto's "testimony was part of [his] tactical strategy." (R. 107: Opinion, PageID 1341-42). Lunn has produced no evidence to overcome either that finding or the strong presumption that his counsel's approach was sound strategy. He has thus fallen far short of proving that his counsel's performance was constitutionally deficient.

### b.    Any deficiency was not prejudicial.

Any deficiency in Lunn's counsel's performance did not prejudice Lunn.  A defendant can satisfy *Strickland*'s second prong—prejudice—only when he shows a "substantial" likelihood that "the result would have been different" if his counsel had not provided constitutionally deficient performance.  *Richter*, 562 U.S. at 111-12.  "[T]he question is not whether a court can be *certain* counsel's performance had no effect on the outcome or whether it is *possible* a reasonable doubt might have been established if counsel acted differently."  *Id.* at 111 (emphases added).  Instead, the substantial-likelihood standard is a rigorous one:  in all but the "'rarest case,'" it is indistinguishable from "a more-probable-than-not standard."  *Id.* at 112 (quoting *Strickland*, 466 U.S. at 697).

The district court correctly held that Lunn had not met this standard.  The evidence against Lunn at trial was, as this Court put it, "'overwhelming.'"  *Lunn*, 786 F. App'x at 554 (citation omitted).  And as the district court correctly pointed out, much of the testimony Lunn now wishes his counsel had hired a forensic pathologist to give was already before the jury through Dr. Belloto's testimony or through Lunn's counsel's cross-examination of the government's expert witnesses or both.  *See* (R. 107: Opinion, PageID 1342-43).  Both forensic pathologists Lunn has since found would have testified that Lorain County did not conduct an autopsy, that it should have conducted an autopsy, and that, without one, there was

27

insufficient certainty to conclude either that Dowler *did* die from a mixed-drug overdose or that Dowler *did not* die from natural causes, such as choking or heart problems. *See* (Doc. 16: Appellant's Br., Pages 26-28). Yet as the district court noted, the jury heard "that the fentanyl in the victim's blood level was just over the therapeutic range, that levels of fentanyl are known to increase after death due to post-mortem redistribution, and that there could have been alternative causes of death." (R. 107: Opinion, PageID 1342). And "[i]t was also brought to their attention many times that there was no autopsy performed." (*Id.*, PageID 1342-43). A forensic pathologist's testimony thus would have been at least largely duplicative of the other evidence in this case. And, importantly, calling a forensic pathologist to testify could have done Lunn's defense more harm than help, as discussed more fully below. Specifically, a forensic pathologist likely would have been forced to admit on cross-examination that the most likely cause of death here was a mixed-drug overdose, which would have bolstered the government's case.

Given all this, Lunn has not shown a substantial likelihood that the outcome would have been different if his counsel had hired a forensic pathologist. Lunn has therefore fallen far short of proving prejudice, as the district court correctly held.

### 3.    Lunn's arguments to the contrary fail.

Lunn's arguments to the contrary fail. His overarching argument has been rejected by the Supreme Court, and his various specific arguments also fail.

### a.   The Supreme Court has rejected Lunn's overarching argument.

To start with, the Supreme Court has already rejected Lunn's overarching argument on appeal.  Boiled down, his argument is that, because the government presented testimony from a forensic pathologist that Dowler died of a mixed-drug overdose, it was thus constitutionally ineffective for his trial counsel to have opted against presenting competing testimony from a competing forensic pathologist. *See, e.g.*, (Doc. 16: Appellant's Br., Pages 14-15, 17-18, 34-35).  But as the Supreme Court stated in *Richter*, the Sixth Amendment "does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert for the defense."  562 U.S. at 111.  There was thus no constitutional obligation for Lunn's counsel to hire a forensic pathologist to testify just because the government presented testimony from a forensic pathologist.

### b.   *Thomas v. Clements* is an out-of-circuit case that is easily distinguishable.

Lunn's heavy reliance on *Thomas v. Clements*, 789 F.3d 760 (7th Cir. 2015), similarly fails to establish error.  (Doc. 16: Appellant's Br., Pages 15-16, 20-24, 34-35).  To state the obvious, *Thomas* is an out-of-circuit case, so even if Lunn is correct that the district court did not follow *Thomas*, that still would be insufficient to establish that the court erred.

More importantly, it is simply not true that the facts of this case are "on all fours with" those in *Thomas*.  (Doc. 16: Appellant's Br., Page 20, 35).  *Thomas* differs from this case in at least three material ways.  First, unlike Lunn's counsel, Thomas's counsel did not hire *any* expert to testify or to otherwise undercut the government's theory of the case.  *Thomas*, 789 F.3d at 768.  Second, unlike in this case, Thomas's counsel testified in an evidentiary hearing that his failure to hire a forensic pathologist "was not a conscious decision—he just did not think to do so." *Id.*  Indeed, the Seventh Circuit suggested that without that testimony, it would have "chalk[ed] [the] decision up as strategic or tactical."  *Id.* (citing *Hinton*, 571 U.S. at 274-75).  Third, unlike what this Court characterized as "'overwhelming evidence'" of Lunn's guilt in this case, *see Lunn*, 786 F. App'x at 554 (citation omitted), the Seventh Circuit characterized the government's case against Thomas as being "weak."  *Thomas*, 789 F.3d at 763, 771-72.

Whatever persuasive value *Thomas* might have in a case that was on all fours with it, it is not persuasive here.  Here, Lunn's counsel *did* hire an expert to undercut the government's theory of the case.  Here, there is no evidence that Lunn's counsel's decision not to hire a forensic pathologist was anything other than a strategic decision.  And without such evidence, Lunn cannot overcome the strong presumption that his counsel's decision *was* strategic.  *See Reeves*, 141 S. Ct. at 2410.  Finally, here there was "'overwhelming evidence'" of Lunn's

guilt, *see Lunn*, 786 F. App'x at 554 (citation omitted), which, as the Supreme

Court explained in *Richter*, makes this a case in which avoiding a battle of experts

and relying on cross-examination can be the "best strategy."  562 U.S. at 111.

Finally, to the extent this Court does not find this case to be distinguishable

from *Thomas*, it should decline to follow *Thomas*.  For the reasons explained

throughout this brief, Lunn's counsel provided constitutionally effective assistance.

This Court therefore should affirm the district court's judgment.

> **c.** **Lunn has failed to overcome the presumption that his counsel made a strategic decision not to hire a forensic pathologist, and there was good reason not to hire a forensic pathologist here.**

Lunn's arguments that "[t]here was no conceivable benefit to not calling" a

forensic pathologist and his mere speculation about whether Lunn's counsel made

a conscious decision not to call a forensic pathologist also fail to establish error.

(Doc. 16: Appellant's Br., Pages 5, 11, 16, 20, 29, 35).  To start with, the decision

of Lunn's counsel not to hire a forensic pathologist is strongly presumed to have

been "for tactical reasons rather than through sheer neglect."  *Gentry*, 540 U.S. at

8.  That is especially true here because there was no evidentiary hearing here and

thus no evidence to suggest negligence.  *See id.*  Lunn has presented no evidence to

overcome the presumption, and without any evidence, he cannot overcome it.  *See*

*Reeves*, 141 S. Ct. at 2410.  Simply saying that he can "'discern no strategic reason

why'" his counsel did not hire a forensic pathologist falls far short of Lunn's burden of production here.  (Doc. 16: Appellant's Br., Page 29 (citation omitted)).

Besides, calling a forensic pathologist to testify about Dowler's cause of death could easily have backfired, and attempting to avoid that outcome would have been a reasonable strategic choice.  *United States v. Davis*, another case with very similar facts, illustrates this point.  At trial in that case, the defense— attempting to avoid application of the same "death-results enhancement"—called a forensic pathologist to testify regarding the victim's cause of death after a 23-year-old avid bodybuilder also died of an apparent mixed-drug overdose.  *See United States v. Davis*, 970 F.3d 650, 653-54, 656 (6th Cir. 2020); *United States v. Davis*, No. 1:16CR260, R. 96: Trial Trans, PageID 1998 (N.D. Ohio Apr. 24, 2018).  There, like here, the death had occurred in Lorain County and no autopsy had been conducted.  *Davis*, No. 1:16CR260, R. 96: Trial Trans., PageID 2002-03.

The defense's forensic pathologist in *Davis* gave the same sort of testimony that Lunn now wishes his counsel had hired a forensic pathologist to give.  The forensic pathologist testified that "[i]n order to do an investigation of the death of a suspected drug intoxication, you need to do an autopsy," and without one, the coroner would "not have sufficient data to be able to" "render[] an opinion for manner and cause of death."  *Id.*, PageID 2003.  In support, he relied heavily on standards from the National Association of Medical Examiners.  *Id.*, PageID 2005-

09. He also testified about post-mortem redistribution and how this can result in measured fentanyl levels that are artificially inflated. *Id.*, PageID 2017-19. And he posited alternate explanations for what might have caused the victim's death, including heart failure and the victim's use of anabolic steroids. *Id.*, PageID 2012-17. In sum, the forensic pathologist testified that, without an autopsy, it was his opinion that no cause of death could be determined. *Id.*, PageID 2019.

On cross-examination, however, the forensic pathologist was forced to admit that a mixed-drug overdose was nevertheless the most likely cause of death. The government on cross-examination elicited admissions from the forensic pathologist that the "most likely cause of death in this case" was "a drug overdose death involving multiple drugs" given the victim's young age and the lack of medical history or evidence suggesting that the possible alternate causes of death actually caused the victim's death. *See id.*, PageID 2032-34, 2048-51, 2055-68, 2073-77. And the government also elicited an admission that autopsies are not in fact required in every case. *Id.*, PageID 2025, 2027-28.

During closing arguments, the government repeatedly emphasized the fact that even Davis's forensic pathologist agreed that an overdose was the most likely cause of death:

> Now, [the forensic pathologist] seemed to say – seems is a bad word – he did say it looked like an overdose. It seemed like an overdose. He had a [hunch] it was a[n] overdose[.]

* * *

[H]e said it seemed like an overdose, looked like an overdose, sort of the old "walks like a duck, talks like a duck, it is a duck."

* * *

[The forensic pathologist] ultimately agreed that it was a factor that the body was right next to the dresser with the kid and the drugs and that's – he's saying sure does look like a drug overdose, very suspicious.  If I had to guess, if I had a [hunch], it would be a drug overdose.

* * *

He had a [hunch] it was an overdose.

*United States v. Davis*, No. 1:16CR260, R. 106, PageID 2198-2208 (N.D. Ohio May 2, 2018).  At the conclusion of that trial, the jury convicted Davis of causing the victim's death and this Court affirmed, noting (just as in this case) the "overwhelming" evidence against him.  *Davis*, 970 F.3d at 654-55.

There is a significant likelihood that this same scenario would have played out in Lunn's trial if his counsel had hired a forensic pathologist.  Like the victim in *Davis*, Dowler was a young and otherwise healthy person who died shortly after ingesting drugs distributed by the defendant and who showed physical signs consistent with a mixed-drug overdose.  And here, unlike in *Davis*, there was no anabolic steroid usage to point to as a plausible alternative cause of death.  Any forensic pathologist hired by Lunn's counsel would thus likely have been forced to admit on cross-examination that the most likely cause of Dowler's death was a

mixed-drug overdose, which would have only bolstered the government's case. Trying to avoid this outcome was a reasonable strategic choice.

Indeed, had this scenario played out, there would have been at least an argument that Lunn's counsel provided ineffective assistance of counsel by "*calling* an expert who, on cross-examination, directly contradicted the defendant's sole defense." *Awkal v. Mitchell*, 613 F.3d 629, 651 (6th Cir. 2010) (Meritt, J., dissenting) (discussing *Combs v. Coyle*, 205 F.3d 269 (6th Cir. 2000)) (emphasis added). And Lunn's current argument that his counsel "enabled the government to close with such a powerful, damning argument is by itself profoundly prejudicial" would no doubt have been the same argument he would have made in that alternate scenario. (Doc. 16: Appellant's Br., Page 33).

### d.    Lunn's remaining arguments also fail.

Lunn's remaining arguments likewise fail. First, the full record shows the hyperbolic nature of Lunn's various statements in his appellate brief that his trial counsel did not "put on *any* evidence calling Dr. Miller's cause-of-death conclusion into doubt," or that the government's witness's testimony "went unrebutted" or "unanswered" or "unchallenged" at trial, or other such statements. (Doc. 16: Appellant's Br., Pages 11, 15, 17, 18, 23, 29, 31). As described already, Lunn's counsel *did* present evidence—Dr. Belloto's testimony—that called into question the government's theory of the case and *did* challenge the government's

expert witness's testimony, both through Dr. Belloto's testimony and through

vigorously cross-examining the government's expert witnesses.  The fact that

Lunn's counsel did not *also* present testimony from a forensic pathologist does not

erase the rest of Lunn's counsel's defense.

Second, Lunn's discussion of *Hinton* fails to show that the district court

erred.  (Doc. 16: Appellant's Br., Pages 15-16, 36-37).  There is no evidence in the

district court's opinion that it "misread" *Hinton.  See* (*id.*, Page 15).  Nowhere in

that opinion did the district court say that a counsel's decision to hire one expert

insulates him from claims of ineffective assistance relating to his decision whether

to hire additional experts, as Lunn suggests.  (*Id.*, Page 16).  Rather, as *Hinton* and

*Reeves* make clear, each decision regarding whether to hire an expert, and whom to

hire if counsel decides to hire an expert, is strongly presumed to be a strategic

choice that, if it is well-informed, is virtually unchallengeable.  *Reeves*, 141 S. Ct.

at 2410; *Hinton*, 571 U.S. at 275.  The only way for Lunn to avoid that strong

presumption is to produce evidence proving that Lunn's counsel instead acted

negligently, *Reeves*, 141 S. Ct. at 2410, and he has produced no such evidence.

Nothing in the district court's opinion contradicts any of this.

Third, Lunn's complaint that the district court referred once in its opinion to

"the fatal drugs" does not show error.  (Doc. 16: Appellant's Br., Page 34).  One of

the defense's arguments at trial had been that even if the jury believed that Dowler

died from an overdose, it should find that the government had not sufficiently proven that Lunn's drugs—rather than someone else's—had caused Dowler's death. At trial, Lunn's counsel had cross-examined investigators about the other drugs found in Dowler's bedroom and about whether they had investigated other individuals with whom Dowler had corresponded about other types of drugs (such as Percocet) in the weeks and months before she died. *See* (R. 84: Trial Trans., PageID 874-80, 883, 947-50). And in his closing argument, Lunn's counsel asked "why didn't they investigate the . . . three or four other people who are texting or Facebook messag[ing]" Dowler about drugs. (*Id.*, PageID 1048; *see also id.*, PageID 1042-50). This context explains the district court's statement that Dr. Belloto had testified "that the fentanyl in the victim's blood could have been from a previous use, therefore, the fatal drugs could have been provided by a different dealer." (R. 107: Opinion, PageID 1341). It was not error for the district court to describe how the testimony that Lunn's counsel procured from Dr. Belloto furthered the defense's theory that another drug dealer's drugs may have killed Dowler, particularly after the jury decided that it was drugs that killed Dowler.

Fourth, to the extent Lunn attempts to use his counsel's cross-examination of the government's witnesses, including about Lorain County's reasons for not conducting an autopsy, to prove ineffective assistance, (Doc. 16: Appellant's Br., Pages 8-9, 18-20, 23, 29-30), this Court lacks jurisdiction to grant relief based on

those arguments.  Although Lunn argued below that this cross-examination supported an ineffective-assistance claim, the district court rejected that as a ground for relief and denied a certificate of appealability.  *See* (R. 97-1: Section 2255 Motion, PageID 1168, 1174-75, 1178; R. 107: Opinion, PageID 1340, 1342).  And the certificate of appealability this Court granted Lunn did not include that issue.  *See* (Doc. 9-2: Order Denying Certificate of Appealability, Pages 3-4; Doc. 12-2: Order Granting Certificate of Appealability, Page 1).  Lunn is therefore barred from affirmatively relying on his counsel's cross-examination as evidence of ineffective assistance.  *See Dunham*, 486 F.3d at 934-35.

Besides, even if this Court had jurisdiction to consider them, Lunn's cross-examination-based arguments provide no basis to grant him relief, for at least three reasons.  First, Lunn's claim that his counsel's cross-examination "'fell flat'" at trial, *see* (Doc. 16: Appellant's Br., Page 23), is an assessment made with the benefit of hindsight.  But the reasonableness of a trial decision must be assessed "as of the time of counsel's conduct," *Strickland*, 466 U.S. at 490, since any ultimately unsuccessful defense may look deficient under "the harsh light of hindsight." *Cone*, 535 U.S. at 702.  Considered as of the time of trial, Lunn's counsel was following a strategy that the Supreme Court had said could be the "best strategy" in a case like this.  *See Richter*, 562 U.S. at 111.  Second, even with the benefit of hindsight, the record shows that counsel vigorously cross-examined

38

the government's witnesses and successfully elicited concessions that bolstered the

defense's themes and provided new avenues to challenge the government's case.

And third, Lunn has presented no evidence that his counsel did not strategically

choose to end any particular line of questions during cross-examination when he

did, as he the caselaw requires him to do to overcome the strong presumption that

those choices were strategic.  *See Reeves*, 141 S. Ct. at 2410.  Lunn thus has not

shown that the cross-examination was constitutionally ineffective.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should affirm the judgment of the

district court.

<div style="margin-left:40%">

Respectfully submitted,

MICHELLE M. BAEPPLER
First Assistant United States Attorney


By: /s/ *Jason Manion*
    Jason Manion
    Assistant United States Attorney
    United States Court House
    801 West Superior Avenue, Suite 400
    Cleveland, Ohio 44113
    (216) 622-3781
    (216) 522-7358 (facsimile)
    Jason.Manion@usdoj.gov

</div>

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing contains 9,034 words according to the word-counting feature of Microsoft Word for Office 365 and complies with this Court's 13,000-word limitation for briefs.

/s/ *Jason Manion*
Jason Manion
Assistant United States Attorney

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 30(b), the following filings from the district

court's records are designated as relevant to this appeal:

| DESCRIPTION OF ENTRY | RECORD ENTRY NO. | PAGE ID RANGE |
|---|---|---|
| Docket Sheet, Northern District of Ohio, Case No. 1:16CR258 | N/A | N/A |
| Indictment | 1 | 1-4 |
| Transcript of Trial Proceedings Held on February 13, 2018 | 83 | 618-828 |
| Transcript of Trial Proceedings Held on February 14, 2018 | 84 | 829-1076 |
| 28 U.S.C. § 2255 Motion | 97 | 1158-1288 |
| Opinion Denying 28 U.S.C. § 2255 Motion | 107 | 1339-44 |
| Order Denying 28 U.S.C. § 2255 Motion | 108 | 1345 |
| Notice of Appeal | 109 | 1346 |