**No. 21-4136**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

DELANTE L. LUNN,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

**On Appeal from the United States District Court for the Northern
District of Ohio, Case No. 1:21-CV-87 (1:16-CR-258)**

_____

**REPLY OF APPELLANT**

_____

Emmett E. Robinson
ROBINSON LAW FIRM LLC
6600 Lorain Avenue #731
Cleveland, Ohio 44102
Telephone: (216) 505-6900
Facsimile: (216) 549-0508
erobinson@robinsonlegal.org

*Attorney for Petitioner-Appellant
Delante L. Lunn*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

ARGUMENT ................................................................................................... 1

   I.  Trial Counsel's Failure to Retain a Forensic Pathologist to Testify Concerning Cause of Death Constituted Deficient Performance .................. 1

      A. The Government's Sufficient-Performance Argument Falls Flat ............ 2

      B. The Failure to Retain a Qualified Expert Was Not a "Tactical" or "Strategic" Decision ................................................................. 8

   II. Trial Counsel's Deficient Performance Badly Prejudiced Mr. Lunn .......... 10

      A. At Trial, the Government's Cause-of-Death Case Was Relatively Weak and By No Means "Overwhelming" ............................................... 11

      B. The Prejudice Wrought by Trial Counsel's Deficient Performance Was Not Negated by Belloto's Testimony or Dr. Miller's "Admissions" ........................................................................ 14

   III. The Government's Other Arguments Are Unavailing ............................... 17

      A. *Thomas v. Clements* Is on All Fours with this Case and Counsels Granting § 2255 Relief to Mr. Lunn ................................................... 17

      B. The Government's "Expert-for-Expert" Argument Is Artificial and Meritless ................................................................................ 20

      C. Dr. Miller's Cause-of-Death Testimony Went Unrebutted at Trial ........ 21

CONCLUSION ............................................................................................... 23

CERTIFICATE OF COMPLIANCE ................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Burrage v. United States*, 571 U.S. 204 (2014) ........................................................6

*City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221 (6th Cir. 1995) ........................................................................................... 6-7

*Harrington v. Richter*, 562 U.S. 86 (2011) ..............................................................20

*Thomas v. Clements*, 789 F.3d 760 (7th Cir. 2015) ..................... 4, 11, 16, 17-20, 22

*United States v. Abrams*, 811 F. App'x 342 (6th Cir. 2020) ................................. 5-6

*United States v. Davis*, 970 F.3d 650 (6th Cir. 2020) ...............................................10

*United States v. Lunn*, 786 F. App'x 545 (6th Cir. 2019) ................................. 11, 12

*Woolley v. Rednour*, 702 F.3d 424 (7th Cir. 2012) ........................................... 18, 22

**STATUTES**

21 U.S.C. § 841 ....................................................................... 1, 5, 12, 23

28 U.S.C. § 2255 .............................................................................. *passim*

# **ARGUMENT**

## I.  **Trial Counsel's Failure to Retain a Forensic Pathologist to Testify Concerning Cause of Death Constituted Deficient Performance.**

As explained in Delante Lunn's opening brief, in order for the 20-year minimum sentence found in 21 U.S.C. § 841(b)(1)(C) to apply to him, the jury had to find beyond a reasonable doubt that drugs he distributed caused Shanee Dowler's death.  There was strong evidence at trial that Mr. Lunn had sold drugs to Ms. Dowler, but the evidence that her death was caused by those drugs was far weaker.  Yet Mr. Lunn's appointed trial counsel failed to retain an expert qualified to testify on cause of death, so the government expert's unequivocal testimony that drugs supplied by Mr. Lunn caused Ms. Dowler's death went unrebutted.  Defense counsel's failure to retain a qualified expert was not "strategic" or "tactical." Rather, it amounted to ineffective assistance.

The government, of course, contends otherwise, arguing that in fact trial counsel provided Mr. Lunn with a "constitutionally sufficient" defense that "undercut" the government's case and that, at any rate, all defense-counsel decisions related to expert witnesses are presumed "strategic" or "tactical" and thus enjoy absolutely immunity from scrutiny in all but the rarest of circumstances. (Gov't Br. at 24, 30.)  But the sufficiency argument is unavailing, and, even without the § 2255 hearing to which Mr. Lunn was entitled, the record here is clear

that the "decision" not to retain an expert qualified to testify on the case-dispositive cause-of-death issue was not "strategic" or "tactical."

## A. The Government's Sufficient-Performance Argument Falls Flat.

The government argues that, notwithstanding trial counsel's failure to retain an expert competent to testify on the case-determinative issue, trial counsel's performance was "constitutionally sufficient" for three reasons:  counsel retained pharmacist Robert Belloto as an expert, counsel "vigorously cross-examined" the government's experts, and counsel "prominently featured" several arguments, including, "non-drug-related possible causes of death" in his closing.  (Gov't Br. at 24-26.)  But these supposed examples of competence come nowhere near to excusing or negating counsel's failure to retain an expert qualified to testify to the actual cause-of-death issue.[1]

First, the government argues trial counsel served as a constitutionally effective advocate for Mr. Lunn notwithstanding his failure to proffer an expert

---

[1] The government is cognizant of the weakness of its arguments. Throughout its brief, the government is careful with word choice, never once asserting that defense counsel put on or elicited any evidence that, e.g., "contradicted," "opposed," or otherwise directly disputed Dr. Miller's unequivocal testimony that drugs supplied by Mr. Lunn caused Ms. Dowler's death.  Instead, the government consistently uses the far weaker and more ambiguous term "undercut," asserting some fourteen times not that any evidence put on or elicited by defense counsel contradicted Dr. Miller but that defense evidence tangentially "undercut" the government's case.  (Gov't Br. at iv, 2, 3, 7, 8, 15, 16, 17, 18, 19, 20, 24, 30 (twice).)

qualified to testify (or any other affirmative evidence, for that matter) in Mr. Lunn's favor on the determinative cause-of-death issue because the expert witness trial counsel did retain—pharmacist Belloto—was "experienced" and "had testified in approximately 100 prior trials" and because Belloto "testified . . . that the . . . fentanyl level measured in Dowler's blood was not a lethal level." (Gov't Br. at 24.) But the government ignores the elephant in the room: the "experienced" Belloto was prohibited from testifying on the determinative issue *in this case*— cause of death—and, in those "approximately 100 prior trials," never once had he been permitted to testify on that subject. (Mot. to Exclude, RE 29, PageID# 147 (Belloto "has never testified in court as to cause of death").)

Further, the assertion that Belloto "testified . . . that the . . . fentanyl level measured in Dowler's blood was not a lethal level" is incorrect. (Gov't Br. at 24.) The government cites a 15-page section of Belloto's testimony as supposed support for this assertion, but review of that testimony—and of Belloto's testimony in its entirety—belies the government's claim. (*Id.* at 25 (citing Trial Tr., RE 84, at PageID# 962-75, 976).) Belloto never testified that the fentanyl level detected in Ms. Dowler's blood sample was not a "lethal level" or that it could not have killed her. Indeed, he was barred from doing so. Rather, Belloto merely testified that what constitutes a fatal overdose varies by individual and that some individuals with fentanyl blood-concentration levels above 3.3 do not die. (*E.g.*, Trial Tr., RE

84, at PageID# 969.)  But an abstracted truism followed by anecdote unrelated to the actual case at bar is worlds apart from testimony that the drugs Ms. Dowler ingested were "not . . . lethal."

Second, the government contends that trial counsel was constitutionally effective despite the failure to retain a cause-of-death expert in this cause-of-death case because counsel "vigorously cross-examined" and "used cross-examination to bolster the defense's themes."  (Gov't Br. at 36, 25.)  But trial counsel's limited attempts to pick around the edges of the government's cause-of-death expert's unequivocal testimony that drugs sold by Mr. Lunn caused Ms. Dowler's death were no substitute for presentation of affirmative expert evidence actually contradicting Dr. Miller's otherwise-uncontradicted testimony.

Moreover, the government greatly exaggerates the supposed value of the "admissions" trial counsel elicited from Dr. Miller.  As discussed in detail in Mr. Lunn's opening brief (Opening Br. at 15-17 & n.8-10), this certainly was *not* "a case where counsel's cross-examination of [the state's forensic pathologist] made up for the lack of [defense] expert" testimony.  *Thomas v. Clements*, 789 F.3d 760, 769 (7th Cir. 2015).

Nonetheless, the government asserts that Mr. Lunn's trial counsel forced Dr. Miller to "admit[] that other . . . health conditions could have caused [Ms.] Dowler's death . . . ."  (Gov't Br. at 25 (citing trial transcript of PageID# 700-01).)

4

This is misleading. As set forth in Mr. Lunn's opening brief, trial counsel did ask Dr. Miller about several other possible causes of death. (Opening Br. at 16-17 n.9.) But Dr. Miller was dismissive and never waivered from his unequivocal position that the drugs caused Ms. Dowler's death. He did, as the government suggests, admit (though "admit" is a strong word) the "remote possibility" that other conditions could have contributed to Ms. Dowler's death, but he was unrelenting in his testimony that, regardless of the presence or absence of any other contributing factors, the drugs remained a but-for cause of Ms. Dowler's death. (Trial Tr., RE 83, at PageID# 700-01 (Q. Could Ms. Dowler's death have been from another cause, say cardiomegaly . . . ? A. It's a remote possibility in a 24-year-old girl. If she had cardiomegaly, the drugs would contribute to her death, and she still would have died as a combined result" of the drugs and cardiomegaly); *id.* at 701 ("Q. What about untreated high blood pressure? A. Well, that would again . . . predispose her to overdosing on her drugs."); *id.* ("Q. Could she have had pneumonia and this would cause a similar presentation of death? A. It could, but the main source of her getting pneumonia would be overdosing . . . .").) And but-for causation is what matters under the law. "The Supreme Court has held that § 841(b)(1)(C)'s 'death results' enhancement requires" only "the 'but for' finding" that, but for the drugs distributed by the defendant, the decedent would not have died. *United States v. Abrams*, 811 F.

App'x 342, 348 (6th Cir. 2020) (citing *Burrage v. United States*, 571 U.S. 204, 218-19 (2014)).

In short, the "admi[ssion]" touted by the government "that other health conditions could have caused Ms. Dowler's death" (Gov't Br. at 25) is illusory. In fact, Dr. Miller only "admitted" a "remote possibility" that another condition could have contributed to Ms. Dowler's death while drug-overdose remained a but-for cause. Accordingly, as more fully explained in Mr. Lunn's opening brief, Dr. Miller's testimony on cross-examination strengthened, rather than weakened, the government's case, as he used the opportunity to repeatedly re-affirm his opinion that drugs were a but-for cause.[2]

Third and finally, the government argues that Mr. Lunn's trial counsel was constitutionally effective because he "prominently featured" several useful arguments in his summation. (Gov't Br. at 26.) But "[a]rgument is not a substitution for evidence." *City of Covington v. Covington Landing Ltd. P'ship*, 71

---

[2] Careful review shows that this is by no means the only time that the government stretches the import of the trial record to the brink of, and sometimes beyond, what the facts and law can bear. For instance, the government also touts in this section the assertion that defense wrung from Dr. Miller a concession "that they had not examined inside Dowler's throat for a piece of a Snickers bar." (Gov't Br. at 25.) But in fact defense counsel never pressed for a clear answer to this (relatively inconsequential) question: "Q. Was there ever any attempt to check [Ms. Dowler's] throat or larynx and see if perhaps (a piece of Snickers bar) was lodged in there? A. Her mouth would have been examined, yes, and its' not in the front of her oral pharynx. Q. It's not what? A. It's—it was not present in the front of her mouth." (Trial Tr., RE 83, at PageID# 699-700.)

F.3d 1221, 1228 (6th Cir. 1995).  Further, the only "prominently featured" argument on the government's list that bears directly on cause of death is argument regarding "non-drug-related possible causes."  (*See* Gov't Br. at 26.)  But as just shown, Dr. Miller repeatedly testified that there was only a "remote possibility" that any other factor would have contributed to Ms. Dowler's death and, even then, the drugs would have remained a but-for cause.  So this argument, such as it was, wasn't backed by evidence.

The government also lists "post-mortem [re]distribution" and "the lack of an autopsy" as other "prominent features" in defense counsel's closing argument. (Gov't Br. at 26.)  But recall, as set forth in more detail in Mr. Lunn's opening brief, that trial counsel failed to effectively exploit the lack of autopsy on cross, asking only a single question that, if anything, added to Dr. Miller's credibility. (Opening Br. at 5, 17 n.10.)  To be sure, the phenomenon of post-mortem redistribution and the absence of an autopsy were important components of any competent representation of Mr. Lunn.  But checking these off the list did not somehow excuse trial counsel from retaining an expert competent to testify on—or putting forth any other affirmative evidence concerning—the case-dispositive cause-of-death issue.

In short, the government's examples of supposed intervals sufficient performance do not hold up under scrutiny and do not absolve counsel of the failure to retain a qualified expert.

### B. The Failure to Retain a Qualified Expert Was Not a "Tactical" or "Strategic" Decision.

The government separately argues that Mr. Lunn is not entitled to § 2255 relief because trial counsel's "decision" (so called) not to retain a qualified expert was "tactical" or "strategic." The government says that it is Mr. Lunn's burden to show otherwise and that, by not putting on evidence at an "evidentiary hearing" showing that trial counsel's failure to retain a qualified expert was not a strategic or tactical decision, he has failed to satisfy that burden. (Gov't Br. at iv, 30, 31.) Reinforcing that point, the government urges that the need to presume trial counsel's "decision" was "tactical "is especially true here because there was [1] no evidentiary hearing and [2] thus no evidence to suggest negligence." (*Id.* at 31.)

The government misses the mark on both points. First, the government fails to grapple with the fact that Mr. Lunn explicitly requested an evidentiary hearing (Memo. in Support of § 2255 Mot., RE 97-1, PageID# 1185) but was (wrongly) denied one, despite § 2255's mandate that "[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon . . . ." 28 U.S.C. § 2255(b). Mr.

Lunn never had the opportunity to elicit testimony from trial counsel at a § 2255 "evidentiary hearing" and thus cannot be faulted for failing to do so.  (Gov't Br. at iv, 30, 31.)  The government attempts to hem him in with circular logic:  The trial court denied Mr. Lunn's § 2255 motion without a hearing because (it said) counsel's failure to retain a qualified expert was a "tactical" decision.   The government, in turn, argues on appeal that the trial court was correct to chalk that "decision" up to "tactics" because Mr. Lunn failed to present evidence showing otherwise at a § 2255 hearing—that is, at the hearing that never occurred because the "decision" not to retain a qualified expert was "tactical."

Second, notwithstanding the fact that the trial court erroneously denied Mr. Lunn's request for a hearing, still there is clear evidence in the record that defense counsel's failure to retain an expert competent to testify on cause of death was anything but "tactical" or "strategic."  As the government pointed out in its motion to exclude, Belloto's expert report (attached to the government's motion to exclude) made it clear that defense counsel and Belloto intended for Belloto to opine on cause of death.  (Mot. to Exclude, RE 29, PageID# 147.)  Even more significant, in his opposition to the government's motion to exclude, defense counsel confirmed that he did indeed "_seek[] to admit . . . Belloto's opinion on 'cause of death'_ . . . ."  (Opp. to Mot. to Exclude, RE 32, PageID# 185 (emphasis added).)  Thus, even in the absence of the evidentiary hearing Mr. Lunn requested,

the record is clear that defense counsel did not make a "strategic" or "tactical" decision not to retain an expert qualified to testify on cause of death. Rather, defense counsel wanted to put on cause-of-death testimony but retained an unqualified expert, erroneously believing—despite eight months' notice to the contrary (*see* Opening Br. at 6-8, 25)—that that unqualified expert would be permitted to testify as to this crucial issue. The record is clear, then, that the absence of a qualified expert was due to ineffective assistance, not due to an intentional tactical or strategic choice.[3]

## II.    **Trial Counsel's Deficient Performance Badly Prejudiced Mr. Lunn.**

Trial counsel's failure to retain an expert qualified to testify on cause of death badly prejudiced Mr. Lunn. This failure meant that Dr. Miller's cause-of-death testimony went uncontradicted and that the trial record lacked evidence that cause of death could not be properly determined on the medical record before the trial court. The prejudice was compounded by the massive 20-year minimum-

---

[3] This record evidence also negates the government's argument based on *United States v. Davis*, 970 F.3d 650 (6th Cir. 2020), which, at any rate, was entirely speculative. (Gov't Br. at 32-35.) Among other things, the government offers no evidence (there is none) to suggest that a qualified expert witness like Dr. Felo or Dr. Spitz here would have made the same concession made by the *Davis* expert or that the jury in Mr. Lunn's case would have responded similarly given the different natures of the two cases. Interestingly, though elsewhere in its brief the government rightly cautions against undue use of hindsight in conducting Sixth-Amendment analysis (Gov't Br. at 21, 38), here the government itself eagerly plays Monday-morning quarterback, albeit for the opposing team.

sentence provision whose application turned on the cause-of-death inquiry and was exacerbated further still by the fact that the government's case "was not ironclad by any stretch of the imagination." *Thomas*, 789 F.3d at 771.

But the government argues that the ineffective assistance provided by trial counsel did not in fact prejudice Mr. Lunn. As with its "sufficient performance" arguments, however, here too the government is far off base.

### A. At Trial, the Government's Cause-of-Death Case Was Relatively Weak and By No Means "Overwhelming."

The government contends that, notwithstanding the reasoning set forth in his opening brief, Mr. Lunn could not have been prejudiced by trial counsel's deficient performance because, on direct appeal, this Court characterized the evidence against Mr. Lunn as "'overwhelming.'" (Gov't Br. at 27 (quoting *United States v. Lunn*, 786 F. App'x 545, 554 (6th Cir. 2019)).) Given that "overwhelming" evidence, the government's theory goes, testimony from a qualified expert could not possibly have created reasonable doubt as to cause of death. The government bets big on this theory. Indeed, it quotes the "overwhelming" language from the direct appeal no fewer than eleven times. (*Id.* at 3, 5, 14, 17, 18, 24, 26, 27, 30 (twice), 34.)

But as Mr. Lunn previously explained in his Petition for Rehearing, while the evidence cited by the Court on direct appeal "may or may not have [constituted] 'overwhelming' evidence that Mr. Lunn sold drugs to Ms. Dowler,

there certainly was not overwhelming evidence that the drugs he supplied caused her death." (Pet. for Rehr'g at 10.) As the Appellate Judge who originally denied Mr. Lunn's application for a certificate of appealability noted, on direct appeal this Court cited four pieces of evidence that together supposedly constituted "overwhelming evidence" of guilt:

> We cited [1] messages sent between Lunn and the decedent; that [2] the drugs found on the decedent's nightstand were found in toxic levels in her blood; that [3] the drugs were packaged in similar material as that which the confidential informant bought [*sic*]; and that [4] Lunn told the informant "that his heroin was so good that it killed a girl."

(Aug. 8, 2022 Order at 4 (citing and quoting *Lunn,* 786 F. App'x at 553).) But as also discussed in Mr. Lunn's Petition for Rehearing, two of these four pieces of evidence—numbers 1 and 3—*have nothing to do with cause of death*. (Pet. for Rehr'g at 10.) Rather, they bear only on whether Mr. Lunn sold drugs to Ms. Dowler. Mr. Lunn's § 2255 motion, of course, does not challenge his distribution conviction. Instead, "his prejudice arguments are confined to the massive sentencing enhancement he received because of the jury's finding that 'death . . . result[ed] from the use of the substance' distributed by him." (*Id.* at 11 (quoting 21 U.S.C. § 841(b)(1)(C)).)

That leaves only two pieces of evidence that might supply "overwhelming" proof of guilt. The first of these is that "the drugs found on the decedent's nightstand were found in toxic levels in her blood." But only *one* drug was found

12

at a concentration above therapeutic levels and even then barely so.  (Opening Br. at 4 & n.4; Pet. for Rehr'g at 11.)   And the fact that the phenomenon of post-mortem redistribution overstates post-mortem drug concentrations further reduces the probative value of this evidence.  (*See* Opening Br. at 3-4; Pet. for Rehr'g at 11.)   That leaves one final piece of supposed evidence that, at first blush, does seem compelling: namely, that Mr. Lunn supposedly "told [an] informant 'that his heroin was so good that it killed a girl.'"  (Aug. 8, 2022 Order at 4 (quoting *Lunn,* 786 F. App'x at 553).)  But as explained in the Petition for Rehearing,

> **this "evidence" was no evidence at all**.  Rather, it was double hearsay supposedly uttered by a deceased former cellmate of Mr. Lunn. (*See* Trial Tr., ECF No. 84, at 383 (PageID 830).) It was, accordingly, inadmissible at trial and *was never presented to the jury.* (*See generally* Trial Tr., ECF Nos. 82-84.) It was only mentioned during a sidebar, at which the government paraphrased the deceased informant's supposed statement. (Trial Tr., ECF No. 84, at 383 (PageID 830). *See also id.* at 384 (PageID 831) (Government: "Obviously, the Government realizes it can't get in [the informant's supposed] statements . . . [as to] what Mr. Lunn told him.").)

(Pet. for Rehr'g at 12 (bold added).)   Given all this, this Court's assessment on direct appeal that there "was overwhelming evidence of . . . guilt" clearly applied only to the distribution charge itself, *not* to the "death . . . result[s]" enhancement. (*See id.* at 12.  *See also Lunn,* 786 F. App'x at 554 ("There was overwhelming evidence of guilt in this case.  Indeed, [defense counsel] eventually admitted near the end of the trial that there was 'pretty strong evidence *defendant sold Ms. Dowler heroin . . . .*'"  (cleaned up; emphasis added).)

13

But the government does not even acknowledge, let alone address, these arguments, instead choosing to repeatedly parrot the "overwhelming evidence" phrase without any attempt to contextualize it or explain how it applies (it does not) to the "death . . . result[s]" enhancement that is actually the subject of this appeal. For these reasons, the government's "overwhelming evidence" argument fails.

**B. The Prejudice Wrought by Trial Counsel's Deficient Performance Was Not Negated by Belloto's Testimony or Dr. Miller's "Admissions."**

The government next asserts Mr. Lunn was not prejudiced by trial counsel's ineffective assistance because "much of the testimony Lunn now wishes his counsel had hired a forensic pathologist to give was already before the jury" by means of Belloto's testimony and the testimony of Dr. Miller on cross-examination. (Gov't Br. at 27.) Here the government relies on the same evidence to support this "no prejudice" theory as it did to support the "sufficient performance" theory discussed above. Specifically, the government says that, even without a qualified expert, the jury still heard evidence (1) regarding post-mortem redistribution, (2) that Ms. Dowler's fentanyl levels were just over the normal therapeutic range, (3) that there was no autopsy, and (4) that "there could have been alternative causes of death." (Gov't Br. at 28.) Therefore, the government reckons, Mr. Lunn was not prejudiced. But none of these categories of evidence

14

save the last bears directly on cause of death.  *See supra* at 4-6.  And that last category, as discussed above, in fact was *not* presented to the jury.  *Id.*  Contrary to the government's assertions, Dr. Miller spoke in terms of *additional* contributing factors, not *alternative* causes of death.  *Supra* at 4-6.  That is, he consistently maintained that the drugs were a but-for cause of Ms. Dowler's death.[4]

Moreover, the expert opinions offered by Drs. Felo and Spitz in their declarations go far beyond the four points noted by the government above.  True, as the government says, there was testimony at trial that no autopsy was conducted. But there was no testimony at trial, for example, that this was in violation of governing standards and was "professionally unacceptable."  (Felo Decl., RE 97-2, PageID# 1189; Spitz Decl., RE 97-3, PageID# 1235.)  And, of crucial importance, there was no testimony that, without an autopsy, *it was impossible to properly determine cause of death in this case*.  (*Cf.* Opening Br. at 10, 21; Felo Decl.

---

[4] Regarding other cause-of-death testimony, when asked whether "without an autopsy [cardiomegaly was] incapable of being diagnosed," defense expert Belloto responded "correct" without further elaboration.  (Trial Tr., RE 84, at PageID# 971.)  But this passing question was posed and answered in a generalized, abstract fashion, as Belloto—a non-physician—was not permitted to testify regarding potential causes of death *as they related to Ms. Dowler specifically*. Further, Dr. Miller—as the only witness qualified to testify on cause of death—had already testified that, even if cardiomegaly had been *a* cause in Ms. Dowler's case, still the drugs would have remained a but-for cause of her death.  (Trial Tr., RE 83, at PageID# 700-01.)  In other words, regardless of the presence or absence of cardiomegaly, the drugs, per the only evidence before the jury on the issue, remained a but-for cause.  Belloto said nothing—indeed, was barred from saying anything—to contradict that.

PageID# 1189-91; Spitz Decl. PageID# 1235-37.) Sure, as the government says, post-mortem redistribution and the fact that Ms. Dowler's fentanyl levels barely exceeded the therapeutic range were topics of discussion at trial. But while those issues weaken the government's case at the edges, at bottom neither is inconsistent with Dr. Miller's unequivocal expert pronouncement that the drugs caused Ms. Dowler's death. Because the defense put on no expert (or other evidence) to contradict that cause-of-death testimony, Mr. Lunn was badly prejudiced.

The irony, then, is that, when it comes to prejudice analysis, the categories of evidence that the government points to as reasons why Mr. Lunn was supposedly not prejudiced by trial counsel's ineffective assistance—post-mortem redistribution, a fentanyl concentration just outside the therapeutic range, the lack of an autopsy—actually cut the other way. This was not an open-and-shut cause-of-death case in which favorable defense testimony from an expert actually qualified to speak to cause of death would not have moved the needle. Rather, as the evidence cited by the government shows—and as pointed out in Mr. Lunn's opening brief—"the government's case 'was not ironclad by any stretch of the imagination.'" (Opening Br. at 27 (quoting *Thomas*, 789 F.3d at 771).) But at the same time, while weakening the government's case, these categories of evidence cited by the government *do not* directly contradict Dr. Miller's emphatic cause-of-

16

death testimony.  So while the government's case was weak, the testimony it proffered on the crucial cause-of-death issue still went on contradicted.

In other words, sworn testimony by a qualified defense expert directly challenging Dr. Miller's otherwise-uncontradicted case-of-death conclusions was precisely what was needed to potentially create reasonable doubt and thereby tip the balance in this case.  Seen in this light, it is the weaknesses in the government's case highlighted by the government here that made the effects of trial counsel's ineffective assistance so devastating.

### III.    The Government's Other Arguments Are Unavailing.

The government includes several additional arguments in its brief, all of which, due to factual deficiencies, legal deficiencies, or both, are unavailing.

#### A. *Thomas v. Clements* Is on All Fours with this Case and Counsels Granting § 2255 Relief to Mr. Lunn.

The government tries in vain to meaningfully distinguish the Seventh Circuit's closely analogous decision in *Thomas v. Clements* from this case.  As discussed in greater detail in Mr. Lunn's opening brief (Opening Br. at 17-21), in *Thomas*, the Seventh Circuit reversed a district-court denial of habeas relief in a case that turned on the issue of whether the defendant intentionally caused the decedent's death.  Defense counsel in *Thomas* had failed to procure an expert—or "present[] [any other] affirmative evidence"—to contradict the testimony of the government's forensic pathologist that the killing was "not an accident."  *Thomas*,

789 F.3d at 772, 764.  On habeas review, the defendant offered the testimony of an expert who testified that, on the record before the court, she "could not 'know a definite cause of death'" and thus, contrary to the government expert's conclusions, could not determine whether the killing was intentional.  *Id.* at 765.

In reversing the denial of habeas relief, the Seventh Circuit faulted trial counsel for failing to procure an expert and pointed out that *Thomas* was not "a case where counsel's cross-examination . . . made up for the lack of [defense] expert."  *Id.* at 769.   Just like the case at bar, on cross the state's expert "'repeatedly denied any alternative explanations'" and her "'denials in the face of cross-examination only confirmed the one-sidedness of the expert opinion before the jury.'"  *Id.* at 770 (quoting *Woolley v. Rednour*, 702 F.3d 411, 424 (7th Cir. 2012)).

The similarities between *Thomas* and Mr. Lunn's case are remarkable.  (*See* Opening Br. at 20-21.)  Nevertheless, the government strives (in vain) to create distance between *Thomas* and this case.  First, the government asserts that *Thomas* is distinguishable because "Thomas's counsel did not hire *any* expert to testify . . . ."  (Gov't Br. at 30.)  By contrast, the government says, here "[Mr.] Lunn's counsel *did* hire an expert . . . ."  (*Id.*)  But the government again ignores the elephant in the room—the expert retained by Mr. Lunn's trial counsel was not qualified to testify as to the case-dispositive cause-of-death issue.  So, in fact,

18

when it came to that crucial issue, it was indeed as if trial counsel "did not hire *any* expert" at all. [5]

Next, the governments says *Thomas* is distinguishable from this case because, in *Thomas*, prior defense counsel testified at an evidentiary hearing on the habeas corpus petition that his failure to hire a forensic pathologist "was not a conscious decision—he just didn't think to do so." (Gov't Br. at 30 (quoting *Thomas*, 789 F.3d at 768).) Given this testimony, the Seventh Circuit said, it could not "chalk [the] decision up as strategic or tactical." (*Id.*) By contrast, the government says, given the lack of evidentiary hearing here, "there is no evidence that Lunn's counsel's decision not to hire" an expert competent to testify as to cause of death "was anything other than a strategic decision." (Gov't Br. at 30.) But the government is flat wrong for the reasons discussed in part I.B, above.

Finally, the government says *Thomas* is distinguishable because this Court, on direct appeal, characterized the evidence against Mr. Lunn as "overwhelming." (Gov't Br. at 30.) But again, as already discussed in part II.A above, that characterization clearly applied only to the evidence that Mr. Lunn sold drugs to Ms. Dowler, not to the relatively scant evidence that those drugs caused her death.

---

[5] Surprisingly—given its specious claims, discussed in part III.B directly below, that Mr. Lunn improperly asserts a right to expert-for-expert parity—in making this argument, the *government* engages its own version of Newtonian expert-for-expert calculus, asserting that adhering to an expert-for-expert approach absolves trial counsel from claims of ineffective assistance.

Accordingly, *Thomas v. Clements* remains virtually indistinguishable from this case in all material respects. Mr. Lunn urges this Court to do what the Seventh Circuit did in *Thomas* and reverse the trial court's erroneous denial of post-conviction relief.

### B. The Government's "Expert-for-Expert" Argument Is Artificial and Meritless.

The government also asserts that "the Supreme Court has already rejected [Mr.] Lunn's overarching argument . . . ." by stating that the Sixth Amendment "'does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert for the defense.'" (Gov't Br. at 29 (quoting *Harrington v. Richter*, 562 U.S. 86, 111 (2011)).) But the government can only reach this contrived conclusion by badly mischaracterizing Mr. Lunn's position. "Boiled down," the government says, Mr. Lunn's "argument is that, because the government presented testimony from a forensic pathologist that [Ms.] Dowler died of a mixed-drug overdose, it was thus constitutionally ineffective for his trial counsel to have opted against presenting competing testimony from a competing forensic pathologist." (Gov't Br. at 29.)

That isn't true. Mr. Lunn's argument is not that, because the government presented a forensic pathologist, his counsel was constitutionally required to present one too. Otherwise, Mr. Lunn also would have raised similar ineffective-assistance arguments with respect to trial counsel's "failure" to also present the

20

testimony of a forensic drug analyst and a forensic toxicologist, given that, in addition to Dr. Miller, the government also presented the testimony of experts in those fields as well.  (Trial Tr., RE 83, PageID# 173, 188.)    Rather, "boiled down," Mr. Lunn's argument is that, given the magnitude of the penalty attached to a potential finding that drugs sold by Mr. Lunn had caused Ms. Dowler's death and given the strength of the evidence suggesting that Mr. Lunn had in fact sold drugs to Ms. Dowler, cause-of-death was far and away the most important issue in this case.  Trial counsel was ineffective for failing to put forward *any* favorable, affirmative evidence on that issue where, as here, such evidence was readily available in the form of testimony from a qualified expert.   Further, such a failure is prejudicial where, as here, it could well have altered the outcome of the case.

### C.  Dr. Miller's Cause-of-Death Testimony Went Unrebutted at Trial.

Dr. Miller testified unequivocally that the at-issue drugs were the but-for cause of Ms. Dowler's death.  The government seeks to write off as "hyperbol[e]" Mr. Lunn's statement in his opening brief that defense counsel left this evidence "unrebutted" as well as other statements of similar effect.  (Gov't Br. at 35 (also criticizing Mr. Lunn for stating that Dr. Miller's cause-of-death conclusion went "unanswered" and "unchallenged").)  But as shown above, that is precisely what occurred.  Bellotto was barred from testifying as to cause of death and, at most, could only touch on tangential issues in the abstract.  And, as set forth in detail in

Mr. Lunn's opening brief, defense counsel's cross-examination of Dr. Miller only served to further underscore that his cause-of-death opinion was unequivocal and without rival at trial. (Opening Br. at 15-17 & n.8-10.) In other words, the "'cross-examination only confirmed the one-sidedness of the expert opinion before the jury.'" *Thomas*, 789 F.3d at 770 (quoting *Woolley v. Rednour*, 702 F.3d 411, 424 (7th Cir. 2012)).

Moreover, the "hyperbolic" term "unrebutted" that the government now takes issue with is precisely the language the government itself used in closing arguments at trial: "'What you did hear from Dr. Miller was those drugs were the "but for" cause. . . . Ladies and gentlemen, that was *unrebutted*. *Unrefuted*. *Undisputed*.'" (Opening Br. at 29 (emphasis added; quoting Trial Tr., RE 84, at PageID# 1030).)

* * *

The record shows that the cause-of-death issue was and is at the very center of this case. Defense counsel failed to retain an expert qualified to testify on this issue and thus allowed the government to occupy the field. The record makes clear—despite the trial court's erroneous denial of Mr. Lunn's request for a hearing on his § 2255 motion—that defense counsel's failure to retain a qualified expert was not a strategic or tactical decision. Moreover, trial counsel's cross-examination of the government's cause-of-death witness only exacerbated the

22

problem. Other major flaws in the government's case meant that trial counsel's deficient performance on the cause-of-death issue was profoundly prejudicial. Accordingly, Mr. Lunn is entitled to § 2255 relief.

## CONCLUSION

For all these reasons and those stated in his opening brief, Petitioner-Appellant Delante L. Lunn respectfully asks this Court to reverse the district court's denial of his § 2255 motion, vacate the finding and application of "death . . . results" liability under 21 U.S.C. § 841(b)(1)(C), and remand for resentencing absent application of that 20-year minimum-sentence provision.[6]

Dated:  May 10, 2023

Respectfully submitted,

/s/ Emmett E. Robinson
Emmett E. Robinson
ROBINSON LAW FIRM LLC
6600 Lorain Avenue #731
Cleveland, Ohio 44102
Telephone: (216) 505-6900
Facsimile: (216) 649-0508
erobinson@robinsonappeals.com

*Attorney for Petitioner-Appellant*
*Delante L. Lunn*

---

[6] Alternatively, should the Court conclude, despite part I.B above, that the record is insufficient to determine that the trial counsel's failure to retain a qualified witness was not a "strategic decision," Mr. Lunn respectfully requests remand for an evidentiary hearing on that issue.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,738 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1).  As permitted by Federal Rule of Appellate Procedure 32(g)(1), I have relied on the word count function of Microsoft Word in preparing this certificate.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Emmett E. Robinson
Emmett E. Robinson

*Attorney for Petitioner-Appellant*
*Delante L. Lunn*